Argued and submitted February 24, affirmed May 7, 1997

# Robert E. SMITH
# and Marc D. McDevitt,
## *Petitioners,*

*v.*

# REAL ESTATE AGENCY,
## *Respondent.*

## (693-R-252P; CA A93028)

939 P2d 77

Jacob Tanzer argued the cause for petitioner Robert E. Smith. With him on the brief was Ball Janik, LLP.

Celia A. Havranek argued the cause and filed the brief for petitioner Marc D. McDevitt.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, Leeson, Judge, and Joseph, Senior Judge.

JOSEPH, S. J.

## JOSEPH, S. J.

Petitioners separately seek review of an order by the Real Estate Commissioner pursuant to ORS 696.990(4) and (5) imposing penalties on them for engaging in professional real estate activities without a license. The issues raised by each petitioner are different and will be considered separately.

ORS 696.020(1) provides:

"No person shall engage in, carry on, advertise or purport to engage in or carry on professional real estate activity, or act in the capacity of, a real estate licensee within this state without first obtaining a license as provided for in this chapter."

"Professional real estate activity" is defined by ORS 696.010(12) to include

"any of the following actions, when engaged in for another and for compensation or with the intention or in the expectation or upon the promise of receiving or collecting compensation, by any person who:

"(a) Sells, exchanges, purchases, rents or leases real estate.

"(b) Offers to sell, exchange, purchase, rent or lease real estate.

"(c) Negotiates, offers, attempts or agrees to negotiate the sale, exchange, purchase, rental or leasing of real estate.

"(d) Lists, offers, attempts or agrees to list real estate for sale.

"\* \* \* \* \*

"(j) Assists or directs in the procuring of prospects, calculated to result in the sale, exchange, leasing or rental of real estate.

"(k) Assists or directs in the negotiation or closing of any transaction calculated or intended to result in the sale, exchange, leasing or rental of real estate.

"\* \* \* \* \*

"(n)  Advises, counsels, consults or analyzes in connection with the acquisition or sale of real estate by an entity if the purpose of the entity is investment in real estate."

On fact issues we review for substantial evidence in the whole record, ORS 183.482, and cannot substitute our judgment for the agency's. ORS 183.482(7). On issues involving the meaning and application of statutes we review for errors of law. ORS 183.482(8)(a).

Neither petitioner has ever been licensed in Oregon to engage in professional real estate activity. In July 1991, petitioner McDevitt entered into an exclusive agreement with Murphy Sales Co. (Murphy) to "assist [the] Company in the sale or exchange of the Tahkenitch Property," several thousand acres of timberland in Oregon. If he were successful, McDevitt would receive a finder's fee according to a schedule in the agreement.

McDevitt contacted Smith to see if he could generate interest from Pacific Capital Partners (PCP), a Hawaiian partnership of which Griffith was the managing partner. Smith contacted Griffith and informed him of the availability of the property. In October 1991, as a result of the efforts of Smith and McDevitt, Murphy entered into a sales agreement with Tahkenitch Tree Farm Partnership (TTFP), which was comprised of a Louisiana partnership, Yorkshire Partnership, and PCP. Although the closing date and other terms were subsequently modified, the parties remained the same. Although Griffith had verbally promised Smith a future partnership in PCP, neither Smith nor McDevitt had been made partners in PCP before the sale closed.

On December 28, 1992, the sale to TTFP closed in escrow. Yorkshire Partnership was then in bankruptcy, and the Federal Bankruptcy Court in Louisiana subsequently ordered that title to the property be vested in Pacific Capital Partners of Oregon, Inc. (PCP/Or), in which Smith had an interest. A finder's fee of $225,125 was paid out of escrow to McDevitt and Smith, of which part was released to a law firm to discharge a writ of garnishment against McDevitt; the balance, less wire transfer fees, was deposited to a joint account in the names of McDevitt and Smith, who claimed to do business as McDevitt and Smith, Incorporated.

With respect to petitioner Smith, the parties agree that whether he engaged in professional real estate activity "for another" is the decisive question. Reduced to its essentials, Smith's argument is that, because title to the Tahkenitch property ultimately vested in an entity owned in part by him, *i.e.*, PCP/Or, and there is evidence that Griffith and Smith intended from the beginning of the transaction that Smith ultimately would have an interest in the property, the agency could not find that Smith was acting "for another" in negotiating for the TTFP sale.

There are several reasons why that argument must be rejected. It is not necessary to discuss all of them, for it is fundamentally flawed.

There is no evidence in the record that, when the sale to TTFP was closed, Smith had any interest in that partnership or its partners. To be sure, in a proceeding in connection with the Yorkshire bankruptcy and in another Oregon case, he repeatedly denied having any such interest; he claimed only an interest in McDevitt's finder's fee. His "real estate activity" that the agency concluded violated the law was arranging the TTFP purchase of the property. Although the bankruptcy of Yorkshire and its inability to perform its part of the purchase agreement led eventually to the property's being purchased by PCP/Or from the bankruptcy estate with substantial financial participation by Smith and McDevitt, that does not defeat the significance of Smith's activities in arranging the original TTFP deal. The finding that Smith had no interest in the property when the TTFP transaction closed is supported by substantial evidence in the record. TTFP was "another" for which Smith's activities were performed, as the agency properly concluded.

■ The evidence in the record is that PCP/Or bought the property in 1994; the TTFP transaction had closed in 1992. Smith now contends that he was not acting for another in 1991-92, because he expected and intended to receive an interest in the future. Although it is not clear from the record that that was his position at the hearing,[1] the argument

---

[1] Smith represented himself at the hearing. It is a fair reading of the hearing record that his position was that he was a partner in TTFP because he had an

reflects a misunderstanding of the law. "One act or transaction of professional real estate activity is sufficient to constitute engaging in professional real estate activity * * *." ORS 696.040. Arranging a single real estate transaction in which the person neither has nor obtains a property interest is encompassed by ORS 696.010(12). The finding that Smith was not a partner in TTFP or PCP when he performed his service, supported by substantial evidence, supports the agency's conclusion that he had violated the law.

■      Smith's remaining assignment of error challenges as not supported by substantial evidence the imposition of a penalty pursuant to ORS 696.990(4) and (5) that included "$112,547.50 representing the amount he profited by the unlicensed activity." The agency reasoned:

> "To arrive at the amount that [petitioners] individually profited, absent a written agreement or consistent testimony, I am forced to look at the disbursement and common practice within the real estate industry. The evidence shows the fees were disbursed to a jointly held account. As fee splits between cooperating brokers are negotiable, one must look at what each brought to the transaction. Mr. McDevitt brought the seller and an agreement for a fee in the event a ready, willing and able buyer could be found who would purchase at terms acceptable to the seller. This, in my mind, is at least 50% of the transaction. Mr. Smith provided that buyer and ultimately, through his contacts and efforts, the financing necessary to close the transaction and, therefore accounted for at least 50% of the transaction.

> "Also, Mr. McDevitt and Mr. Smith considered themselves partners which is supported by the joint bank account. Therefore, it is reasonable to conclude that by the joint ownership of the account where the funds were transferred, by their characterization of each other as partners, and by their respective efforts they profited equally from the transaction * * *."

Smith asserts: "This tenuous reasoning is not supported by the record. Indeed, the record does not establish that Smith received any part of McDevitt's fee. It establishes

agreement that he would receive an interest in the property by becoming a partner in PCP or another entity to be formed by Griffith after the TTFP transaction was closed, as Griffith had promised.

only that McDevitt's fee went to a corporate account." He points out that in a deposition in connection with the bankruptcy proceeding he claimed only a right to 25 percent of the fee and that in an affidavit in another proceeding he had claimed a right to only a one-third share. Moreover, there is no testimony or writing in the record that he expected 50 percent of the fee to be paid to him or of how (or whether) the fee had ever been disbursed from the joint account. Thus, he concludes, the agency failed to sustain its "burden of proof" on that issue of fact.

In response, the agency argues that the finding is based on a rational inference from facts that are supported by substantial evidence that Smith and McDevitt were equal "partners" as holders of the joint account and that Smith had been responsible for at least 50 percent of the transaction, including his financial contributions to the devolution of the title to the property to PCP/Or. It points out that the agency was not required to believe Smith's claims of entitlement to a lesser proportion of the fee.

■ Although it is true, as Smith says, that there is no testimonial or documentary evidence that Smith actually received any part of the fee in hand, that is not decisive. The issue for us is whether the agency made reasoned inferences from the facts in the record, *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271, 639 P2d 90 (1981), and we cannot substitute our judgment for the agency's. Applying that standard, we cannot say that the agency did not make a rational determination. We uphold it.

Turning to McDevitt's petition, we note that his way of presenting his assignments of error and arguments does not comply with the Oregon Rules of Appellate Procedure in any substantial way. Moreover, it is doubtful that he raised the issues in the hearing that he now wants to raise. He does not attempt to raise any of the issues that Smith has raised. What he claims is that a certain "Stipulated Order," which on its face was never completed, should have been submitted to the Real Estate Commissioner pursuant to ORS 183.415(5) and OAR 137-03-002(4). There is no such requirement in the applicable law or rules. The claim that the agency was estopped to deny that the controversy had been settled is

equally without substance, and there is no basis in the record for a remand under ORS 183.482(7) because of procedural error.

Finally, McDevitt's assertion that "no controversy presently exists at law" "since ownership of the tract of land is questionable" and that "[t]herefore this court should dismiss this action" flies in the face of the record, the commissioner's findings and good sense.

Affirmed.