Argued and submitted May 8, 2001, decision of Court of appeals affirmed in part
and modified in part; order of Real Estate Commissioner reversed
September 6, reconsideration denied December 3, 2002

## Harold W. DEARBORN,
*Respondent on Review,*

*v.*

## REAL ESTATE AGENCY,
*Petitioner on Review.*

(CA A101556; SC S47677)

53 P3d 436

Jas. Jeffrey Adams, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

No appearance *contra*.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, Riggs, and De Muniz, Justices.**

GILLETTE, J.

---

** Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case; Balmer, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

This is a case of judicial review of a final order of the Real Estate Commissioner (the Commissioner). The order revoked the license of a real estate broker (broker) for engaging in conduct that the Commissioner determined to be subject to professional discipline under ORS 696.301 (1995),[1] set out *post*. On broker's petition for judicial review, the Court of Appeals reversed the order, holding that there was not a sufficient nexus between broker's conduct and his real estate activities to permit disciplinary action under the statute. *Dearborn v. Real Estate Agency*, 165 Or App 433, 997 P2d 239 (2000). Petitioner on review, the Real Estate Agency (the Agency),[2] contends that the Court of Appeals erred in reversing the order. For the reasons that follow, we affirm in part and modify in part the decision of the Court of Appeals.

Because broker does not challenge the factual findings included in the Commissioner's order, we accept those findings as true for purposes of review. *See Jefferson County School Dist. No. 509-J v. FDAB*, 311 Or 389, 393 n 7, 812 P2d 1384 (1991) (unchallenged findings of fact in agency order are considered to be facts for purposes of judicial review). We take our statement of facts from those findings, supplemented with additional facts derived from the record before the Commissioner.

Broker has been licensed as a real estate broker since 1973. In the fall of 1996, Klamath County law enforcement officers interviewed a 16-year-old male runaway whom they were holding at a juvenile detention center on drug charges. Among other things, the youth reported that he had used methamphetamine, marijuana, and alcohol provided by broker at broker's apartment. The youth also reported that broker had engaged in sexual acts while the youth was present and had shown the youth pictures of naked men.

---

[1] The 2001 Oregon Legislature amended ORS 696.301 in Or Laws 2001, chapter 300, section 28. None of those changes affects our analysis in this case.

[2] The Real Estate Commissioner issues broker licenses in the name of the Agency. ORS 696.160 (1995). The Agency is "under the supervision and control" of the Commissioner. ORS 696.375(2). The Commissioner issues orders disciplining persons who are subject to the Agency's authority. ORS 696.301 (1995).

Thereafter, the officers obtained a warrant to search broker's apartment for drugs, pornographic materials, and other evidence relating to the crimes of possession of controlled substances, delivery of controlled substances to minors, and furnishing obscene materials to minors. When the officers executed the warrant, they found pornographic materials and small amounts of cocaine and methamphetamine. They questioned broker and another man who was present in the apartment when they arrived. Broker made some admissions. The other man stated that broker had picked him up in the "mission" district of the city the day before "for the purpose of having sex with him" and that broker had obtained drugs for him. Broker was arrested and ultimately was indicted on seven criminal counts: One count of possession of a controlled substance (cocaine); one count of possession of a controlled substance (methamphetamine); one count of conspiracy; one count of promoting prostitution; one count of prostitution; one count of endangering the welfare of a minor; and one count of furnishing obscene materials to a minor.

In the spring of 1997, broker pleaded guilty to the two drug possession charges. The court sentenced him to 18 months of probation. The court imposed a number of conditions, including requiring that broker pay a fine, perform community service, and refrain from any contact with juveniles during the probationary period. Prosecutors dismissed the remaining charges against broker.

Thereafter, the Commissioner issued a notice of intent to revoke broker's real estate license, alleging that broker was subject to discipline under two subsections of ORS 696.301 (1995). At the subsequent hearing, the Commissioner received in evidence law enforcement investigative reports and other materials relating to broker's arrest and conviction. Broker testified at the hearing and acknowledged that he had possessed and used the drugs in question. Broker also acknowledged having had sexual relations with men whom he picked up in the local mission district and having provided drugs, and money to buy drugs, to such individuals. After the hearing, the Commissioner issued an order suspending broker's license.

Later, on reconsideration, the Commissioner decided that he would revoke broker's license and replace it with a limited salesperson's license for a period of two years, at which time (assuming that broker committed no further sanctionable acts), he would issue broker a new, unrestricted license. In his order on reconsideration, the Commissioner concluded that broker was subject to discipline under two subsections of ORS 696.301 (1995), because broker (1) had pleaded guilty to crimes "which are substantially related to his trustworthiness to engage in professional real estate activity"; and (2) had engaged in conduct that "demonstrates untrustworthy and improper dealings." The Commissioner explained in his order that he was concerned that broker would "indiscriminately seek sexual liaisons with strangers, who could be juveniles, and entice them with drugs." The Commissioner stated:

> *"Though there is no evidence of his use of his position as a real estate licensee for soliciting sexual partners or of his approaching clientele or their families for such purposes, I find the risk unacceptable.* It should be obvious that some juveniles, confronted with an offer of drugs for sex would find the offer very attractive. Though he has not been adjudicated to be a sex offender, he is under court order not to have contact with juveniles under the age of 18 during his probation. If the Court is concerned about [broker's] proximity to juveniles, the Real Estate Agency should share in that concern. This would make working with clientele, listing and showing property difficult, if not impossible.
>
> "Real estate licensees typically have access to people's homes after they are listed, including times when juveniles might be at home alone. Further, a licensee using drugs, who has access to people's homes, also has access to any prescription drugs, cash, or other things convertible to cash found in a home. To allow such an individual this type of access is an unacceptable risk."

(Emphasis added.) The Commissioner also suggested that a broker who abuses cocaine and methamphetamine might convert money held in trust for clients to support his or her habit.

Broker sought judicial review, arguing that ORS 696.301 (1995) pertains only to actions that "were part of and

directly impact [the broker's] duties as a real estate licensee," and that the conduct alleged was not of that kind. The Agency conceded that the Commissioner could suspend broker's license under ORS 696.301 (1995) only for conduct that, at the least, was substantially connected to the broker's *future* real estate activity. The Court of Appeals therefore focused on whether the Commissioner had shown such a connection. *Dearborn*, 165 Or App at 438.

The Court of Appeals noted that the Commissioner had identified two "purported connections" between broker's conduct and his professional activities: (1) the risk that petitioner might use his position as a real estate broker to solicit sex from minors; and (2) the risk that petitioner's use of addictive drugs might lead to misbehavior in his real estate practice. The Court of Appeals considered each purported connection and concluded that, although concerns respecting each might be reasonable in the abstract, there was no "factual support" for the view that such risks actually exist in this case. The Court of Appeals therefore reversed and remanded the case to the Commissioner, because "the concerns identified by the Commissioner * * * fail to fit the facts." *Id.* at 439.

On review in this court, the Agency argues that, contrary to the Court of Appeals' view, the Commissioner rationally can infer that, based on the facts in the case, there are risks to broker's future real estate clients. The Agency further argues that, although the Court of Appeals might itself draw different or more limited inferences respecting broker's future actions than has the Commissioner, the Court of Appeals cannot overturn the Commissioner's order on that basis. As we shall explain, however, that disagreement between the Court of Appeals and Agency over brokers' *future* conduct is the wrong one.

■■ To be entitled to discipline a licensee, the Commissioner first must be able to show that one or more acts of a licensee violated one or more subsections of ORS 696.301 (1995). Whether this licensee—broker—has committed acts that violate those subsections is a question concerning the meaning and scope of those subsections. Such an inquiry is a matter of statutory construction, for which we employ the

analytical framework set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Consistent with that framework we look, first, to the statutory text and context. *Id.* at 610-11.

Our precise inquiry is the meaning and scope of the statutory standards cited in the Commissioner's order, *viz.*, ORS 696.301(26) and (31) (1995). The Court of Appeals' view is that suspension or revocation of a broker's license under either of those sections is authorized only if there is a "substantial nexus" between the conduct at issue and the broker's potential or future real estate activities. *Dearborn*, 165 Or App at 438.

The question is what kind of nexus must exist between particular conduct and real estate activity for the conduct to fall into one of the categories described in ORS 696.301 (1995).

■   ORS 696.301 (1995) provides, in part:

"The commissioner may suspend or revoke the real estate license of any real estate licensee * * * who *has done* any of the following:

"* * * * *"

(Emphasis added.) The statute then sets out, in 33 subsections, a compendium of the kinds of acts by licensees that can give rise to discipline. Virtually all the subsections specify, in one way or another, that the acts that they set out must have occurred in connection with the licensee's real estate activity, and the others, read in context, all appear to be similarly limited in scope. For the sake of brevity, we set out only the specific subsections—(26) and (31)—that the Agency asserts apply to broker's acts:

"(26)   Entered a plea of nolo contendere, or has been found guilty of, or been convicted of, a felony or misdemeanor substantially related to the licensee's trustworthiness or competence to engage in professional real estate activity.

"* * * * *

"(31)  Any act or conduct, whether of the same or of a different character specified in this section which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings."

ORS 696.301(26) (1995) explicitly requires a "substantial nexus" between the acts in question and a licensee's professional activities. That is, the broker's criminal acts must have been *"substantially related* to the licensee's trustworthiness or competence to engage in professional real estate activity." (Emphasis added.) *See also former* ORS 969.060(6), *repealed by* Or Laws 2001, ch 30, § 84 (requiring applicant for real estate license to disclose whether applicant ever has been convicted of felony or misdemeanor "substantially related to the applicant's trustworthiness or competence to engage in professional real estate activity").

The scope of ORS 696.301(31) (1995) is only slightly less clear. It is true that that section contains no explicit requirement that the conduct that it describes have been related to real estate activity; read in isolation, the section could be construed to pertain to *any* conduct demonstrating any variety or degree of the listed failings. However, the idea that section (31) extends to *any* instance of general untrustworthiness, incompetence, or bad faith seems unlikely, given the virtually unlimited kinds of behavior that would fall within so broad a reading of subsection (31)—anything from cheating at cards ("untrustworthiness") to mechanical ineptness at repairing a lawnmower ("incompetence"), to name just two.

Any doubt respecting the scope of ORS 696.301(31) (1995) is eliminated by the context in which subsection (31) appears. As noted, all the other subsections of ORS 696.301 (1995) that surround subsection (31) refer to conduct that is related to past real estate activity, either explicitly or by necessary inference. In fact, the vast majority of the sections specifically refer to acts undertaken *in the course* of the licensee's real estate dealings.

■  Applying the principle of *ejusdem generis*, we conclude from the foregoing review of text and context that the reference in subsection (31) to "any act or conduct * * * which constitutes or demonstrates bad faith, incompetence or

untrustworthiness, or dishonest, fraudulent or improper dealing," is a reference to conduct that is substantially related to the broker's trustworthiness, competence, honesty, or good faith to engage in real estate activity.

The history of the changes in the wording of subsection (26) provides further contextual support for that conclusion. The legislature has struggled to identify the acts proscribed in that subsection with sufficient breadth and precision, but ultimately ended that struggle by defining those acts in terms that are similar to those that are employed in subsection (31), *i.e.*, in terms of the character traits that the acts reflect. The wording of subsection (31) has remained relatively constant since 1929.[3] Subsection (26), by contrast, has evolved from a mere listing of specific crimes (extended by the phrase "and other like offense or offenses"),[4] to a somewhat broader description in terms of whether the crimes "involve" certain recognizable common-law offenses[5] and, finally, to its present form. We think that the last change shows that the legislature wished to eliminate the limitation that previously had existed with respect to the *categories* of crimes that might be subject to professional sanctions, but, at the same time, to state expressly a limitation that had been at the core of the statute all along, *viz.*, that conduct of any sort is subject to professional discipline if—but only if—it is related substantially to the licensee's fitness to engage in real estate activity. Although that limitation is not

---

[3] The wording of subsection (31) was altered and shortened by the 2001 amendments to the statute found in Oregon Laws 2001, chapter 300, section 28. *See also*, 334 Or at 495 n 1 (discussing changes).

[4] In 1940, for example, an earlier version of subsection (26) gave the Commissioner the power to suspend or revoke a broker's license if the broker was guilty of

"Forgery, embezzlement, obtaining money under false pretenses, larceny, extortion, conspiracy to defraud, or other like offense or offenses, and who has been convicted thereof in a court of competent jurisdiction of this or any other state."

OCLA § 59-401(m).

[5] In 1975, the legislature amended that provision to authorize the suspension or revocation of a license of a broker who

"[e]ntered a plea of nolo contendere, or has been found guilty of, or been convicted of, a felony or any crime involving forgery, theft, theft by extortion, conspiracy to defraud, or moral turpitude, and the time for appeal has elapsed or the judgment of conviction has been affirmed on appeal."

Or Laws 1975, ch 746, § 23.

stated expressly in any other section of ORS 696.301 (1995), we are persuaded that it is, and always has been, implicit in the statute as a whole, including subsection (31).

■     We conclude that, under both subsections cited by the Commissioner as authority for his decision to revoke broker's license, there must be a substantial relationship between the conduct at issue and a licensee's real estate activities.[6] We next consider whether the conduct at issue in this case would support revocation of broker's license under one or both of those subsections. We begin with ORS 696.301(26) (1995), which authorizes disciplinary action when a broker is convicted of a crime that is "substantially related" to the broker's fitness to engage in real estate activity.

It is important, at this juncture, to identify which facts are relevant to our analysis. Although the Court of Appeals and the Commissioner appear to have treated all the conduct identified in the Commissioner's findings as relevant to subsection (26), it is clear to this court that only a relatively small subset of that conduct is germane. ORS 696.301(26) (1995) authorizes professional discipline against brokers who have been *convicted* of a felony or misdemeanor of a specified sort. Evidence pertaining to other, unrelated criminal charges that the court dismissed, or to acts that the authorities discovered in the course of the criminal investigation, do not support revocation or suspension of a license under that subsection.

The Agency suggests that subsection (26) is not so limited. It contends that the provision must be read in the context of ORS 670.280, which provides:

---

[6] *Webster's Third New Int'l Dictionary*, 2280 (unabridged ed 1993), defines "substantial" as:

"1a: consisting of, relating to, sharing the nature of, or constituting substance: existing as or in substance: MATERIAL * * * b: not seeming or imaginary: not illusive: REAL, TRUE * * * c: being of moment: IMPORTANT, ESSENTIAL * * * 3a: having good substance: firmly or stoutly constructed: STURDY, SOLID, FIRM * * * b: having a solid or firm foundation: soundly based: carrying weight * * *."

"Except as provided in ORS 342.143 or 342.175, no licensing board shall deny, suspend or revoke an occupational or professional license or certification solely for the reason that the applicant or licensee has been convicted of a crime, *but it may consider the relationship of the facts which support the conviction and all intervening circumstances* to the specific occupational or professional standards in determining the fitness of the person to receive or hold such license or certificate."

(Emphasis added.) The Agency argues that, although it is a more general statute, ORS 670.280 nonetheless modifies ORS 696.301(26) (1995), thereby extending the scope of the latter statute to include conduct and circumstances surrounding the crime and ultimate conviction. That category would include, in the Agency's view, any conduct mentioned in any of the voluminous law enforcement investigative reports that relate to broker's convictions, including discussions of broker's sexual behavior and his pattern of giving drugs to sex partners.

We disagree. Although ORS 670.280 explicitly confers some authority to look at the "facts which support the conviction" and "intervening facts" when applying ORS 696.301(26) (1995), that statute cannot reasonably be read as expanding the scope of subsection (26) to permit imposing a sanction under that subsection for acts extraneous to broker's actual convictions.[7] What the Commissioner may consider, for purposes of subsection (26), are such facts as the broker's conviction of possession of cocaine and methamphetamine, that both substances are controlled substances, that small amounts of those substances were found in his home, and that he admitted to purchasing and using both substances on more than one occasion. If, in light of *those* facts, the Commissioner can conclude that broker's crimes were "substantially related" to his trustworthiness or competence to engage in professional real estate activity at the time that he committed them, then the Commissioner had authority to discipline him under section (26).

---

[7] Of course, if other acts by a licensee that are uncovered in the law enforcement reports would support charges under *other* subsections of ORS 696.301 (1995), imposing sanctions because of those other acts would be permissible. But that is not what the Commissioner did here.

■■    However, he cannot so conclude. The Commissioner's order on reconsideration fails to recognize that the reference in ORS 696.301 (1995) to acts that a licensee "has done" places a temporal element in the statutory inquiry: The acts that give rise to the Commissioner's authority must have occurred in the past and, at the time that they occurred, must have been substantially related to broker's real estate activities. As the Commissioner acknowledges in his order, however, there is "no evidence" that broker's criminal activities arose out of broker's "use of his position as a real estate licensee." It follows that the Commissioner had no authority to sanction broker under ORS 696.301(26) (1995).

■    We recognize that the Commissioner offers two justifications in the "Reasoning" section of his opinion that he believes justify disciplining broker under ORS 696.301(26) (1995). They are: (1) the statement that, when a real estate licensee has used highly addictive drugs (as broker has), there is a risk that the licensee will use his or her access to people's homes to steal prescription drugs, cash, or valuables; and (2) the statement that there is an additional risk that the licensee will use funds held in trust for clients to support his or her drug habit. Those statements miss the mark, because they purport to justify the Commissioner's choice to sanction broker on the possibility that broker might do something *in the future* that would violate some subsection of ORS 696.301 (1995). As we have explained, however, the Commissioner's right to discipline must arise out of something that a licensee *has done,* not out of something that a licensee *might do.* So far as this record discloses, none of broker's criminal acts had anything to do with his real estate activities. None involved clients, real estate, or money entrusted to broker. Without such a nexus, the Commissioner could not permissibly conclude that broker had violated ORS 696.301(26) (1995). We hold, in short, that the Commissioner erred in concluding that broker's drug possession convictions were "substantially related" to broker's real estate activities.

■    We turn to the question whether the Commissioner properly could revoke broker's license for violating ORS 696.301(31) (1995). Subsection (31) is broader than subsection (26), inasmuch as it authorizes the Commissioner to revoke a broker's license for engaging in any conduct

that "demonstrates" untrustworthiness, incompetence, or improper dealings. On some level, all the conduct described in the Commissioner's order may be said to fit into that category. However, as we have discussed, the range of acts to which subsection (31) applies is limited by the implicit requirement that the conduct in question relate substantially to the broker's fitness and ability to engage in real estate activity.

As noted, the Commissioner explained his decision to revoke broker's license in terms of certain perceived risks to broker's *future* real estate clients—that, *e.g.*, broker might offer drugs in exchange for sex to a client's children or to other juveniles whom broker might meet through his real estate dealings, that broker might use his access to client's homes to steal prescription drugs, cash, or valuables, or that broker might convert money held in trust for clients to his own use to support his possible drug habit. In doing so, the Commissioner is positing a predictive relationship between broker's past conduct, which the Commissioner acknowledges did not involve real estate activities, and broker's future professional conduct, *i.e.*, the Commissioner is asserting that broker's crimes, sexual behavior, and drug use create or increase the probability that broker will abuse his position as a real estate professional in one or more of the suggested ways.

That is not the question, however. Instead, the question is whether the acts that broker committed, at the time that he committed them, "demonstrated" untrustworthiness, incompetence, or improper dealings with respect to broker's real estate activities. As we have explained with respect to subsection (26), they did not: They did not involve real estate, clients, or funds of clients. They were private acts, separate from broker's professional life. And, because they were, the Commissioner had no authority under them to discipline broker under ORS 696.301(31) (1995).

The Court of Appeals reversed the Commissioner's order because it found "no factual support in the record to justify the concerns [that the Commissioner] identified" therein. *Dearborn*, 165 Or App at 438. As we have explained, we see

the problem somewhat differently, but our analysis leads to the same conclusion: The Commissioner erred.

We add one final note respecting the appropriate disposition of this case. The Court of Appeals' disposition of the case was a reversal and *remand*, although that court concluded (and, as we have explained, we also conclude) that the record contained "no factual support" for the Commissioner's decision. *Dearborn*, 165 Or App at 441. Under such circumstances, there is no purpose to be served by a remand; the order simply must be reversed. *See* ORS 183.482(8)(a)(A) (authorizing reviewing court to set aside order if court determines that agency "has erroneously interpreted a provision of law"). The decision of the Court of Appeals is modified in that respect.

The decision of the Court of Appeals is affirmed in part and modified in part. The order of the Real Estate Commissioner is reversed.