Argued and submitted July 2, reversed October 9, 2002, petition for review allowed February 4, 2003 (335 Or 195)

Paul A. KERLEY,
*Petitioner,*

*v.*

REAL ESTATE AGENCY,
*Respondent.*

200003-R-098C; A115200

55 P3d 549

Andrew P. Ositis argued the cause and filed the brief for petitioner.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Judge, and Warren, Senior Judge.

BREWER, J.

## BREWER, J.

Petitioner seeks judicial review of a final order of the Real Estate Commissioner (the commissioner) that revoked his real estate broker's license based on conduct that occurred before he received the license. He argues that his prelicensure misconduct cannot serve as a basis for the revocation of his license. Because the facts are undisputed, we review for errors of law. ORS 183.482(8)(a); *Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995); *Smith v. Real Estate Agency*, 148 Or App 62, 65, 939 P2d 77 (1997). We reverse.

In 1988, 1990, and 1992, petitioner, who was then a member of the Oregon State Bar (the Bar), entered into three real estate investment partnerships (the partnerships). In each case, petitioner drafted the partnership agreement. A second partner, Rogovoy, was the managing partner of each partnership. In the partnerships formed in 1988 and 1990, all of the capital was provided by a third partner, King. In the partnership formed in 1992, which also included King, a fourth partner, Kayser, provided all of the capital.

Sometime in 1993, petitioner invested in the Dandelion Pub, a business venture that did not involve any of his partners in the partnerships. In October and November 1993, petitioner wrote and negotiated three separate checks totaling $50,000 from two of the partnership accounts to fund the Dandelion Pub venture. Petitioner did not inform any of his partners that he had withdrawn partnership funds for that purpose. In April 1994, petitioner realized that he could not replace the $50,000, so he disclosed to Rogovoy his unauthorized withdrawal of the partnership funds. When King learned of petitioner's conduct, he instituted partnership dissolution proceedings. On April 14, 1995, all three partnerships were dissolved pursuant to a settlement agreement.

On May 1, 1995, the Real Estate Agency (the agency) issued a real estate salesperson's license to petitioner. In August 1995, King's attorney filed a Bar complaint against petitioner. In June 1997, petitioner applied for a real estate broker's license, which the agency issued in July 1997. In

January 1999, the Bar commenced formal disciplinary proceedings against petitioner. The Bar's complaint alleged that petitioner had violated several disciplinary rules in connection with his real estate partnership activities, including the unauthorized withdrawal of partnership funds. In December 1999, petitioner executed a Form B resignation from the Bar, which the Supreme Court accepted.

When the agency learned that disbarment proceedings had been instituted against petitioner, it commenced a separate disciplinary investigation of his activities. On June 20, 2000, the agency notified petitioner that it intended to revoke both of his real estate licenses. A hearing officer determined that the agency was not authorized to discipline petitioner for conduct that had occurred before he applied for a real estate license. The commissioner reversed, in part, the hearing officer's order, concluding that the agency was authorized, under ORS 696.301(31) (1999),[1] to revoke petitioner's broker's license based on conduct that had occurred before petitioner applied for a real estate license. Petitioner seeks judicial review of the commissioner's order revoking his broker's license.[2]

The issue on review concerns the meaning of ORS 696.301, which provides, in part:

"The Real Estate Commissioner may suspend or revoke the real estate license of any real estate licensee, reprimand any licensee or deny the issuance or renewal of a license to an applicant who has done any of the following:

"* * * * *

"(31) Any act or conduct, whether of the same or of a different character specified in this section which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings."

---

[1] Unless otherwise noted, all references to provisions of ORS chapter 696 are to the 1999 versions of the statutes.

[2] The commissioner adopted the hearing officer's amended proposed order, which concluded that petitioner did not violate ORS 696.301 in connection with his application for a salesperson's license. Accordingly, the commissioner took no disciplinary action regarding petitioner's salesperson's license.

The agency acknowledges that some subsections of ORS 696.301 are, by their terms, limited to conduct that occurred while the subject held a real estate license. For example, ORS 696.301(26) authorizes revocation as a sanction where a licensee has "[e]ntered a plea of nolo contendere, or has been found guilty of, or been convicted of, a felony or misdemeanor substantially related to the licensee's trustworthiness or competence to engage in *professional real estate activity*." (Emphasis added.) However, because an *applicant's* relevant conduct must have occurred before the issuance of the license for which application is made, the agency asserts that the phrase "deny the issuance" and the term "applicant" in the statute's preface demonstrate that the various subsections of ORS 696.301 generally apply to prelicensure conduct. And, the agency notes, unlike subsection (26), subsection (31) is not limited by its terms to "professional real estate activity." Therefore, the agency reasons, ORS 696.301(31) authorizes the commissioner to discipline a real estate licensee for conduct demonstrating untrustworthiness that occurred before licensure.

The agency's interpretation of ORS 696.301 cannot be reconciled with the Supreme Court's recent decision in *Dearborn v. Real Estate Agency*, 334 Or 493, 53 P3d 436 (2002). In *Dearborn*, the commissioner, relying, in part, on ORS 696.301(31), issued an order revoking a broker's license after the broker had been convicted of two drug possession offenses and also had admitted furnishing drugs and money to buy drugs for people with whom the broker had engaged in sexual activities. We reversed the order, holding that there was not a sufficient nexus between the broker's conduct and his real estate activities to permit disciplinary action under the statute. *Dearborn v. Real Estate Agency*, 165 Or App 433, 440, 997 P2d 239 (2000). The Supreme Court affirmed our reversal of the order, but on different grounds.[3]

The court concluded that the preface to ORS 696.301 refers to

---

[3] The court also modified our disposition of the case by deleting our remand to the agency. Instead, it held, "the order simply must be reversed." *Dearborn*, 334 Or at 506.

"acts that a licensee 'has done'[, which] places a temporal element in the statutory inquiry: The acts that give rise to the Commissioner's authority must have occurred in the past and, *at the time that they occurred, must have been substantially related to broker's real estate activities.*"

*Dearborn*, 334 Or at 504 (emphasis added). The court rejected the agency's argument that ORS 696.301(31) applies, without restriction, to *any* conduct evincing untrustworthiness or improper dealings, because the "vast majority" of the subsections of ORS 696.301 describe conduct "undertaken *in the course* of the licensee's real estate dealings." *Dearborn*, 334 Or at 500 (emphasis in original). Applying the principle of *ejusdem generis*, the court concluded that the phrase "any act or conduct" in ORS 696.301(31) refers to conduct that is substantially related to the "broker's trustworthiness, competence, honesty, or good faith to engage in real estate activity." *Dearborn*, 334 Or at 500-01. The court ultimately held that

"the question is whether the acts that broker committed, at the time that he committed them, 'demonstrated' untrustworthiness, incompetence, or improper dealings *with respect to broker's real estate activities.* As we have explained with respect to subsection (26), they did not: They did not involve real estate, clients, or funds of clients. *They were private acts, separate from broker's professional life. And, because they were, the Commissioner had no authority under them to discipline broker under ORS 696.301(31) (1995).*"

*Id.* at 505 (emphasis added).

■ ■   The court's construction limits the reach of ORS 696.301(31), as it relates to licensees, to *professional* real estate activities, not "private acts."[4] Accordingly, as pertinent here, *Dearborn* compels the conclusion that, even though petitioner's conduct demonstrated "untrustworthiness" and "improper dealings" and involved the misuse of funds in connection with real estate investments, that conduct was not within the regulatory ambit of ORS 696.301(31). It is of no moment that petitioner's prelicensure dishonesty might

---

[4] That construction need not—indeed, should not—be understood to extend to applicants to whom a license has not yet been issued.

presage similar behavior in the future. On that score, the court said:

> "[The Commissioner's arguments] miss the mark, because they purport to justify the Commissioner's choice to sanction broker on the possibility that broker might do something *in the future* that would violate some subsection of ORS 696.301 (1995). As we have explained, however, the Commissioner's right to discipline must arise out of something that a licensee *has done,* not out of something that a licensee *might do*."

*Dearborn*, 334 Or at 504 (emphasis in original).

The court did not discuss the agency's argument that the applicability of ORS 696.301 to the *issuance* of a real estate license suggests that the legislature intended—except as otherwise specified in particular subsections—to authorize the discipline of licensees for prelicensure conduct unrelated to their professional real estate activities. However, the agency *did* make that argument in *Dearborn*.[5] It is apparent from the court's silence on the subject that it found the argument unpersuasive.

In summary, even though petitioner's conduct demonstrated untrustworthiness and improper dealings, that conduct did not occur while he held a real estate license and therefore did not relate to professional real estate activities. Accordingly, the commissioner was not authorized, under ORS 696.301(31), to rely on that conduct as the ground for revocation of petitioner's broker's license.

Reversed.

---

[5] Specifically, the agency asserted in its petition for review of this court's decision that

> "[t]he Court of Appeals has * * * implied that a regulatory agency can infer a licensee is untrustworthy and poses a risk to the public only if the previous conduct has occurred in the course of licensed activities. If that were an actual requirement, a regulatory agency could never deny issuing a license to an *applicant* based on untrustworthy conduct. Even when applicants—as opposed to licensees—have engaged in conduct that adversely bears on their trustworthiness to hold a license, they by definition as applicants for a license have not yet engaged in licensed activities."

(Footnote omitted; emphasis in original.)