Argued and submitted September 5, 2003,* decision of the Court of Appeals reversed, order of the Real Estate Commissioner affirmed September 10, 2004

Paul A. KERLEY,
*Respondent on Review,*

*v.*

REAL ESTATE AGENCY,
*Petitioner on Review.*

(200003-R-098C; CA A115200; SC S49995)

96 P3d 1211

---

* On Judicial Review of an order of the Real Estate Commissioner. 184 Or App 163, 55 P3d 549 (2002).

Philip Schradle, Special Counsel to the Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Andrew P. Ositis, Salem, argued the cause and filed the brief for respondent on review.

Andrea L. Bushnell and Matt Farmer, Salem, filed the brief for *amicus curiae* Oregon Association of Realtors.

GILLETTE, J.

**GILLETTE, J.**

This is a case of judicial review of a final order of the Real Estate Commissioner (the commissioner). The order revoked the real estate salesperson's and real estate broker's licenses of respondent Kerley, based on Kerley's embezzlement of funds belonging to two partnerships of which Kerley was a member. Kerley had committed the acts of embezzlement before he received his real estate licenses. On Kerley's petition for judicial review, the Court of Appeals reversed the commissioner's order. Relying on this court's decision in *Dearborn v. Real Estate Agency*, 334 Or 493, 53 P3d 436 (2002) (*Dearborn II*), the court held that the commissioner lacked authority to suspend or revoke a real estate license for "private acts." *Kerley v. Real Estate Agency*, 184 Or App 163, 168, 55 P3d 549 (2002). We allowed the commissioner's petition for review and now reverse the decision of the Court of Appeals.

We take our statement of facts from the decision of the Court of Appeals:[1]

"In 1988, 1990, and 1992, [Kerley], who was then a member of the Oregon State Bar (the Bar), entered into three real estate investment partnerships (the partnerships). In each case, [Kerley] drafted the partnership agreement. A second partner, Rogovoy, was the managing partner of each partnership. In the partnerships formed in 1988 and 1990, all of the capital was provided by a third partner, King. In the partnership formed in 1992, which also included King, a fourth partner, Kayser, provided all of the capital.

"Sometime in 1993, [Kerley] invested in the Dandelion Pub, a business venture that did not involve any of his partners in the partnerships. In October and November 1993, [Kerley] wrote and negotiated three separate checks totaling $50,000 from two of the partnership accounts to fund

---

[1] The Court of Appeals' statement of the pertinent facts is a condensed version of the facts found in the commissioner's final order. In his petition to the Court of Appeals, Kerley did not challenge any factual finding in the commissioner's final order. Consequently, those facts are settled for the purposes of judicial review. *See Jefferson County School Dist. No. 509-J v. FDAB*, 311 Or 389, 393 n 7, 812 P2d 1384 (1991) (illustrating rule).

the Dandelion Pub venture. [Kerley] did not inform any of his partners that he had withdrawn partnership funds for that purpose. In April 1994, [Kerley] realized that he could not replace the $50,000, so he disclosed to Rogovoy his unauthorized withdrawal of the partnership funds. When King learned of [Kerley's] conduct, he instituted partnership dissolution proceedings. On April 14, 1995, all three partnerships were dissolved pursuant to a settlement agreement.

"On May 1, 1995, The Real Estate Agency (the agency) issued a real estate salesperson's license to [Kerley]. In August 1995, King's attorney filed a Bar complaint against [Kerley]. In June 1997, [Kerley] applied for a real estate broker's license, which the agency issued in July 1997. In January 1999, the Bar commenced formal disciplinary proceedings against [Kerley]. The Bar's complaint alleged that [Kerley] had violated several disciplinary rules in connection with his real estate partnership activities, including the unauthorized withdrawal of partnership funds. In December 1999, [Kerley] executed a Form B resignation from the Bar, which the Supreme Court accepted.

"When the agency learned that disbarment proceedings had been instituted against [Kerley], it commenced a separate disciplinary investigation of his activities. On June 20, 2000, the agency notified [Kerley] that it intended to revoke both of his real estate licenses."

*Id.* at 165-66.

■     The commissioner[2] is the person responsible for issuing orders disciplining persons who are subject to the agency's authority. ORS 696.301 (1995).[3] In the present case, the commissioner purported to act under the authority granted him to suspend or revoke a real estate license by ORS 696.301(31) (1995), *amended by* Or Laws 2003, ch 398, § 10a, which provided:

---

[2] The Real Estate Agency is "under the supervision and control" of the Real Estate Commissioner. ORS 696.375(2). At the time that the present proceedings were under way, the commissioner issued licenses in the name of the agency. *Former* ORS 696.160, *repealed by* Or Laws 2001, ch 300, § 84.

[3] The legislature has amended ORS 696.301 in various respects since the Real Estate Agency instituted the present proceedings. None of the amendments affects the merits of this case.

"The [Real Estate C]ommissioner may suspend or revoke the real estate license of any real estate licensee or reprimand any licensee, or may deny the issuance or renewal of a license to an applicant, who has done any of the following:

"* * * * *

"(31)  Any act or conduct, whether of the same or of a different character specified in [the other subsections of] this section which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings."[4]

The scope of that subsection, the commissioner determined, extended beyond any acts that a licensee might commit while licensed and permitted the commissioner to suspend or revoke a license when acts that a licensee had committed *before becoming a licensee* demonstrated the requisite degree of, for example, "untrustworthiness" or "dishonest, fraudulent or improper dealings."[5] Kerley, however, argued that ORS 696.301(31) was inapplicable to him because the acts in question all occurred *before* he became a licensee and the scope of the statutory prohibition did not extend to prelicense conduct.

As noted, the Court of Appeals agreed with Kerley. That court, relying on this court's opinion in *Dearborn II*, held that,

"even though [Kerley's] conduct demonstrated untrustworthiness and improper dealings, that conduct did not occur while he held a real estate license and therefore did not

---

[4] The 2003 Legislative Assembly amended subsection (31) in Oregon Laws 2003, chapter 398, section 10a. The subsection now provides:

"Committed an act or conduct substantially related to the applicant or licensee's fitness to conduct professional real estate activity, whether of the same or of a different character and whether or not in the course of professional real estate activity, that constitutes or demonstrates bad faith or dishonest or fraudulent dealings."

No one asserts that the revised version of subsection (31) is applicable to the present case.

[5] Kerley never has denied that his embezzlement of funds belonging to the partnerships was "conduct * * * which constitutes or demonstrates * * * dishonest, fraudulent or improper dealings," as those terms were used in ORS 696.301(31) (1995). In any event, we agree with the commissioner that Kerley's acts fit within that statutory description.

relate to professional real estate activities. Accordingly, the commissioner was not authorized, under ORS 696.301(31), to rely on that conduct as the ground for revocation of petitioner's broker's license."

*Kerley*, 184 Or App at 169. As we shall explain, we read both *Dearborn II* and the statute differently.

Because *Dearborn II*, the case on which the Court of Appeals and Kerley rely, is pivotal to this case, we discuss it in some detail. Dearborn was a licensed real estate broker who pleaded no contest to certain drug possession charges. In addition to those charges, evidence received by the commissioner established that Dearborn had been exchanging drugs for sex with itinerant men and that he may have engaged in such sexual acts while a juvenile male runaway was present in his house. *Dearborn II*, 334 Or at 495-96. After notice and a hearing, the commissioner issued a final order revoking Dearborn's broker's license. In doing so, the commissioner relied on ORS 696.301(26) (1995) (licensee convicted of felony or misdemeanor "substantially related to the licensee's trustworthiness or competence to engage in professional real estate activity") and ORS 696.301(31) (1995).

On judicial review in the Court of Appeals, Dearborn asserted, and the Court of Appeals agreed, that the facts proved at the hearing were not connected sufficiently with Dearborn's activities as a licensee to permit the commissioner to sanction him for those activities. *Dearborn v. Real Estate Agency*, 165 Or App 433, 439, 997 P2d 239 (2000) (*Dearborn I*). This court allowed the commissioner's petition for review.

In *Dearborn II*, 334 Or 493, this court addressed the kind of nexus, if any, that had to exist between any allegedly improper acts by a real estate licensee and real estate activity. To answer that question, the court focused on the wording of the two subsections of ORS 696.301 on which the commissioner had relied, as well as the context in which those two subsections appeared. The court noted, first, with respect to the scope of ORS 696.301, that

"[v]irtually all the subsections specify, in one way or another, that the acts that they set out must have occurred in connection with the licensee's real estate activity, and

the others, read in context, all appear to be similarly limited in scope."

*Id.* at 499. The court then examined the text of the two subsections there at issue and summarized its conclusions respecting subsection (31)[6] as follows:

"[W]e conclude from the foregoing review of text and context that the reference in subsection (31) to 'any act or conduct * * * which constitutes or demonstrates bad faith, incompetence or untrustworthiness, or dishonest, fraudulent or improper dealing,' is a reference *to conduct that is substantially related to the broker's trustworthiness, competence, honesty, or good faith to engage in real estate activity.*"

*Id.* at 500-01 (emphasis added). The court repeated that requirement later in the opinion:

"We conclude that, under both subsections cited by the Commissioner as authority for his decision to revoke broker's license, there must be a *substantial relationship* between the conduct at issue and a licensee's real estate activities."

*Id.* at 502 (emphasis added).

Having set out the foregoing requirement that, to be sanctionable, the real estate licensee's acts must have been substantially related to the licensee's real estate activities, this court then reviewed the acts that Dearborn had committed. As a part of that inquiry, this court observed that there was a temporal element to the commissioner's authority, *i.e.*, the acts that led to sanctions must have occurred in the past; it was not enough that the commissioner could predict that such acts might occur in the future:

"[T]he reference in ORS 696.301 (1995) to acts that a licensee 'has done' places a temporal element in the statutory inquiry: The acts that give rise to the Commissioner's authority must have occurred in the past and, *at the time that they occurred,* must have been substantially related to broker's real estate activities."

*Id.* at 504 (emphasis added).

---

[6] We omit any further substantive discussion of ORS 696.301(26), because that subsection is not implicated in this case.

Finally, this court went on to hold that, respecting the applicability of subsection (31),

"the range of acts to which subsection (31) applies is limited by the implicit requirement that the conduct in question relate substantially to the broker's fitness and ability to engage in real estate activity."

*Id.* at 505. The court then turned its focus specifically to the acts that Dearborn had committed and, respecting those acts, stated:

"[T]he question is *whether the acts that broker committed, at the time that he committed them, 'demonstrated' untrustworthiness, incompetence, or improper dealings* with respect to broker's real estate activities. * * * [T]hey did not. They did not involve real estate, clients, or funds of clients. They were private acts separate from broker's professional life. And, because they were, the Commissioner had no authority under them to discipline broker under ORS 696.301(31) (1995)."

*Id.* at 505 (emphasis added).

In the present case, the Court of Appeals, after reviewing certain parts of the foregoing analysis, held:

"The court's construction limits the reach of ORS 696.301(31), as it relates to licensees, to *professional* real estate activities, not 'private acts.' Accordingly, as pertinent here, *Dearborn [II]* compels the conclusion that, even though petitioner's conduct demonstrated 'untrustworthiness' and 'improper dealings' and involved the misuse of funds in connection with real estate investments, that conduct was not within the regulatory ambit of ORS 696.301(31)."

*Kerley,* 184 Or App at 168 (emphasis in original; footnote omitted).

■   In *Dearborn II,* this court held that the acts that Dearborn had committed simply bore no demonstrable relationship to the things that a real estate licensee does. 314 Or at 505. That is, this court concluded that the acts that Dearborn had committed bore no "substantial relationship" to the activities of a real estate licensee. In the absence of such a relationship, the commissioner did not have authority

to impose sanctions. The court also expanded on its earlier observation that, because ORS 696.301 referred to acts that the licensee "has done," the statute incorporated a "temporal element." That observation is correct as far as it goes: The statute clearly contemplates that the commissioner may impose sanctions for completed acts, not for predicted future acts.

■        However, the opinion in *Dearborn II* went on to assert, as already noted, that the "temporal element" in ORS 696.301 also required that the licensee's completed acts must have related to real estate activities *when they occurred*. 334 Or at 505. We now recognize that the words "has done" in ORS 696.301 do not necessarily justify the latter statements about the statute's reach. In any event, the latter statements were *dictum* because they were unnecessary to the court's ultimate conclusion. Those statements had an unfortunate consequence: They purported to impose a greater limitation on the commissioner's authority to sanction than the statute identifies. To correct that problem, we disavow the *dictum* that we have identified above.[7]

*Dearborn II* held that, on the facts of that case, no act that Dearborn had committed while licensed as a real estate broker was sufficiently connected to the work of a real estate broker to justify suspending his real estate broker's license. The present case is different from *Dearborn II* in that Kerley has committed acts that demonstrate dishonesty and untrustworthiness to carry on real estate activities. However, the acts occurred before Kerley became licensed; the commissioner learned of them only after the licenses were issued. This case thus presents the question whether the commissioner can revoke Kerley's licenses under such circumstances.

The answer to that question is clear. As this court's analysis in *Dearborn II* states, all that ORS 696.301(31) requires to permit the commissioner to sanction certain prior acts is that the acts must "relate substantially to the

---

[7] Our disavowal of *dictum* in *Dearborn II* does not undermine the ultimate conclusion in that case, which rested on the court's determination that Dearborn's conduct was not sufficiently connected to the activities of a licensee to justify the imposition of discipline.

[licensee's] fitness and ability to engage in real estate activity." *Dearborn II*, 334 Or at 505. Here, Kerley's dishonesty met that criterion; that is, it was such that it justified the commissioner's conclusion that Kerley should not continue by virtue of his licenses to be placed in a position of confidence and trust respecting other people's money and property. The fact that the acts in question occurred before Kerley obtained his license also is no barrier to the commissioner's decision. Subsection (31) of ORS 696.301 imposes no requirement that the acts that are subject to discipline have been committed after the licensee received his or her license.

In summary, we hold that the Court of Appeals wrongly reversed the order of the commissioner. We therefore must reverse that decision of the Court of Appeals.

The decision of the Court of Appeals is reversed. The order of the Real Estate Commissioner is affirmed.