31 A.3d 489

**Joel PAUTSCH**

v.

**MARYLAND REAL ESTATE COMMISSION.**

**No. 9, Sept. Term, 2011.**

Court of Appeals of Maryland.

Oct. 28, 2011.

230

Nancy S. Forster (Law Office of Nancy S. Forster, Towson, MD), on brief, for petitioner.

Jessica B. Kaufman, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J. HARRELL, BATTAGLIA, GREENE, *MURPHY, ADKINS, BARBERA, JJ.

BATTAGLIA, J.

■ In this case, we are asked to review the decision of the Maryland Real Estate Commission, Respondent, to revoke the real estate licenses [1] of Joel T. Pautsch, Petitioner, pursuant to

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. According to the Commission's decision, after the initial hearing before an administrative law judge, Joel Pautsch apparently "ex-

Sections 17–322(b)(24)(i) of the Business Occupations and Professions Article, Maryland Code (2000, 2004 Repl.Vol.),[2] based upon his convictions for child abuse. Mr. Pautsch sought judicial review of the Commission's decision in the Circuit Court for Baltimore City,[3] which affirmed in a Memorandum

---

changed his broker's license for a salesperson license at the same brokerage." For the sake of brevity, we shall refer to both as Mr. Pautsch's "licenses."

2. Section 17–322(b)(24)(i) of the Business Occupations and Professions Article, Maryland Code (1989, 2004 Repl.Vol.) provides:

(b) *Grounds.*—Subject to the hearing provisions of § 17–324 of this subtitle, the Commission may deny a license to any applicant, reprimand any licensee, or suspend or revoke a license if the applicant or licensee:

\*    \*    \*

(24) under the laws of the United States or of any state, is convicted of:

(i) a felony[.]

All references to Section 17–322(b)(24)(i) of the Business Occupations and Professions Article ("Section 17–322(b)(24)(i)") throughout are to Maryland Code (1989, 2004 Repl.Vol.), unless otherwise noted; the pertinent provisions remain unchanged.

3. Section 17–329 of the Business Occupations and Professions Article, Maryland Code (1989, 2004 Repl.Vol.) provides that "any person aggrieved by a final decision" of the Maryland Real Estate Commission "in a contested case" may seek judicial review:

(a) *In general.*—Any person aggrieved by a final decision of the Commission in a contested case, as defined in § 10–202 of the State Government Article, may take an appeal as allowed in §§ 10–222 and 10–223 of the State Government Article.

All references to Section 17–329(a) of the Business Occupations and Professions Article ("Section 17–329(a)") throughout are to Maryland Code (1989, 2004 Repl.Vol.), unless otherwise noted; the pertinent provision remains unchanged.

Section 10–222(h) of the State Government Article, Maryland Code (1984, 2004 Repl.Vol.) states:

(h) *Decision.*—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

Opinion penned by Judge Barry G. Williams, in which he reasoned that there was "competent, material and substantial evidence to support" the Commission's decision, and "there [was] no evidence to support the allegation that the decision of the Maryland Real Estate Commission was either arbitrary or capricious." The Court of Special Appeals affirmed in an unreported opinion,[4] concluding that the Commission's "estimation of [Mr. Pautsch's] trustworthiness was neither arbitrary nor capricious," and that Mr. Pautsch "failed to demonstrate any factual or legal error in the Commission's decision." We granted certiorari, *Pautsch v. Maryland Real Estate Commission*, 418 Md. 587, 16 A.3d 977 (2011), to consider the following questions:

1. Did the Court of Special Appeals err in holding that a four year old conviction for sexual child abuse warrants revocation of Petitioner's real estate broker's license "[b]ecause licensure would place members of the public in [Petitioner's] trust" especially when such a conclusion could apply to *any* crime and particularly since Petitioner's con-

---

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

All references to Section 10–222 of the State Government Article throughout are to Maryland Code (1984, 2004 Repl.Vol.), unless otherwise noted; the pertinent provisions relating to this case remain unchanged.

**4.** The Court of Special Appeals considered three questions relating to the Maryland Real Estate Commission's decision to revoke Mr. Pautsch's real estate licenses:

1. Did the Commission err by considering and giving weight to factual "findings" that were never entered into evidence at the hearing and were not part of the record? If so, did this error render the Commission's analysis of Md.Code, Business Occupations and Professions Section 17–322(d)(2) unsupported by competent, material and substantial evidence in light of the entire record as submitted?

2. Did the Commission apply an inappropriate legal standard in revoking Mr. Pautsch's license?

3. Did the Commission improperly conflate a violation of Md.Code, Business Occupations and Professions Section 17–322(b)(24)(i) and an un-alleged and unproven violation of Section (b)(25)?

victions had absolutely no nexus to his work as a real estate broker? [5]

2. In adopting the ALJ's finding of fact that "[Petitioner] has and continues to be a respected real estate broker in Anne Arundel County and carries a reputation of professionalism, diligence and respect [and] [h]is real estate practices have never been affected by felonies that he committed or the therapy that he receives," was it arbitrary and capricious for the Commission to nevertheless conclude that revocation of Petitioner's real estate license was appropriate because his crimes "undermine his trustworthiness in dealing with the public during the course of providing real estate brokerage services, and negatively impact his character and reputation"?

We shall hold that the Commission's determination that there was a nexus between Mr. Pautsch's real estate licenses and his conviction for child sexual abuse was supported by substantial evidence and that the Commission's prescribed sanction, revocation, was neither arbitrary nor capricious.

In July of 2007, the Commission issued a "Statement of Charges and Order for Hearing," which stated:

### *STATEMENT OF CHARGES AND ORDER FOR HEAR-ING*

On February 5, 2007, the Maryland Real Estate Commission filed a complaint against the Respondent, Joel Pautsch, a real estate broker with Providence Realty, LLC. Based on the complaint, and an investigation, the Commission has determined that charges against the Respondent are warranted. Accordingly, in this Order, the Commission will set forth the charges against the Respondent.

---

5. Although Mr. Pautsch asks in his first question for this Court to review the result in the Court of Special Appeals, our role is to review "the decision of the agency, not the decision of the lower court." *Gigeous v. Eastern Correctional Institution.*, 363 Md. 481, 495–96, 769 A.2d 912, 921 (2001).

The Statement of Charges alleged that Mr. Pautsch violated Section 17–322(b)(24)(i) of the Business Occupations and Professions Article, because he had been convicted of sex abuse with a minor and child abuse by a parent, and as such, that his real estate license was subject to suspension or revocation:

### Charges Against the Respondent

The Maryland Real Estate Commission hereby charges the Respondent with violating the Real Estate law, Maryland Annotated Code, Business Occupations and Professions Article, §§ 17–101 et seq. The specific violations of the law are set forth below. The Respondent is advised that these charges, if established following a hearing may result in a suspension or revocation of any real estate license the Respondent currently holds. In addition, in appropriate cases, the Commission may impose a monetary fine of up to $5000.00 per violation, pursuant to Business Occupations and Professions Article, §§ 17–322(c).

It is alleged that the Respondent has been convicted in the Circuit Court for Anne Arundel County in *State of Maryland v. Joel T. Pautsch,* Case No. 02–K–06–001728 IF of Sex Abuse with a Minor, a felony. It is additionally alleged that the Respondent has been convicted in the Circuit Court for *Anne Arundel County in State of Maryland v. Joel T. Pautsch,* Case No. 02–K–07–000140IN of Child Abuse by Parent, a felony.

Based on the above, it is alleged that the Respondent has violated, and is subject to, Business Occupations and Professions Article, §§ 17–322(b)(24) and (25) and 17–322(c), which provide:

### § 17–322 Denials, reprimands, suspensions, revocations, and penalties-Grounds.

(b) Grounds:—Subject to the hearing provisions of § 17–324 of this subtitle, the Commission may deny a license to any applicant, reprimand any licensee or suspend or revoke a license if the applicant or licensee:

\* \* \*

(24) under the laws of the United States or any state, is convicted of:

(i) a felony;

\*     \*     \*

(25) engages in conduct that demonstrates bad faith, incompetency, untrustworthiness or that constitutes dishonest, fraudulent or improper dealings

\*     \*     \*

(c) Penalty.-(1) Instead of or in addition to suspending or revoking a license, the commission may impose a penalty not exceeding $5000.00 for each violation.

The Statement of Charges also reflected that the Commission delegated the task of conducting Mr. Pautsch's hearing to an administrative law judge at the Office of Administrative Hearings ("OAH").[6]

The ALJ held a hearing during which she heard from an investigator for the Commission who authenticated various exhibits, including reports documenting the Anne Arundel County Police Department's investigation of Mr. Pautsch, charging documents, docket sheets from Mr. Pautsch's criminal cases in the Circuit Court for Anne Arundel County, an application to the District Court of Maryland (sitting in Anne Arundel County) for charges against Mr. Pautsch, and a document relating to Mr. Pautsch's registration as a sex offender. The ALJ heard from nine other witnesses, including Mr. Pautsch himself, and those who were associated with

---

**6.** The "Hearing Procedures" portion of the Statement of Charges provided:

### Hearing Procedures

The hearing in this matter includes the charges against the Respondent. It will be held before an Administrative Law Judge of the Office of Administrative Hearings. The hearing in this case will be conducted under the Real Estate Commission Law, Maryland Annotated Code, Business Occupations and Professions Article, §§ 17–101 *et seq.;* the Administrative Procedure Act, Maryland Annotated Code, State Government Article, § 10–201 *et seq.;* regulations of the Office of Administrative Hearings, COMAR 28.02.01 *et seq.;* and Commission and department regulations, COMAR 09.01.03 and 09.11.03.

him, such as colleagues and friends, his pastor, and a former client, and also received several exhibits including a record of Mr. Pautsch's psychotherapy treatment, letters written on his behalf, and a resume of Mr. Pautsch's professional history and accomplishments.

In her proposed decision[7] to the Commission, the ALJ made the following findings of fact:

1. On January 29, 2007, the Respondent pled guilty to the felony charges of Sex Abuse with a Minor and Child Abuse by Parent in the Anne Arundel County Circuit Court. The victims of the Respondent's crimes were his daughter and his niece.

2. On March 23, 2007, as a result of the Respondent's guilty pleas, the Honorable Joseph P. Manck sentenced him to four years in jail with three years suspended. Four months of the year to be served were in the Anne Arundel County Detention Center, with the remaining eight months on house arrest, at which time the Respondent was allowed to work. Judge Manck required the Respondent to register as a child sex offender, to have no unsupervised encounters with minors, and to continue counseling. Judge Manck also ordered that the Respondent be on probation for five years.

---

**7.** In delegating a contested hearing to the Office of Administrative Hearings, an administrative agency "may delegate to the Office the authority to issue proposed ... findings of fact ... conclusions of law ... [and] orders," as adverse to "final" ones:

(b) *Scope of authority delegated.*—An agency may delegate to the Office the authority to issue:

(1) proposed or final findings of fact;

(2) proposed or final conclusions of law;

(3) proposed or final findings of fact and conclusions of law;

(4) proposed or final orders or orders under Article 49B of this article; or

(5) the final administrative decision of an agency in a contested case. Section 10–205(b) of the State Government Article, Maryland Code (1984, 2004 Repl.Vol.). All references to Section 10–205(b) of the State Government Article throughout are to Maryland Code (1984, 2004 Repl.Vol.), unless otherwise noted. The pertinent provisions remain substantively unchanged, although Section 10–205(b)(4) now refers to "Title 20" rather than "Article 49B."

The ALJ also made findings regarding Mr. Pautsch's rehabilitation efforts and other mitigation:

3. The Respondent is currently involved in a church recovery program called "Celebrate Recovery" which is a biblically based twelve step recovery program that addresses many types of addiction issues; it is not limited to alcohol and drug addictions. At least three times per week, he is involved in a Celebrate Recovery activity.

4. The Respondent currently attends therapy and counseling with Jim Gach, Clinical Social Worker. From June 2006 through November 2007, he received psychotherapeutic treatment from James R. David, Ph.D., a private practice psychotherapist and Board certified sex therapist.

5. The Respondent has never previously been the subject of a complaint to the Commission. He has and continues to be a respected real estate broker in Anne Arundel County and carries a reputation of professionalism, diligence and respect. His real estate practices have never been affected by the felonies that he committed or the therapy that he receives.

The ALJ also captioned a recommendation for sanction as "Conclusions of Law": [8]

Based upon the foregoing Findings of Fact and Discussion, I conclude, as a matter of law, that the Respondent's real estate broker's license should be not be [sic] revoked, but should be suspended for six months to allow additional treatment and therapy prior to the resumption of real estate activities. Md.Code Ann., § 17–322(d) (Supp.2007). Additionally, I conclude, that a civil penalty of $10,000 is not

---

**8.** The ALJ identified her sanction recommendation as a conclusion of law, as differentiated from her findings of fact. The issues regarding whether an ALJ recommendation is a finding of fact or a conclusion of law, as well as whether the ALJ had the authority to recommend a sanction under Section 10–205(b) of the State Government Article are not before us. We have assumed, for the sake of this argument, that the ALJ had the authority to make a recommendation for sanction, however.

appropriate in this case.   Md.Code Ann. § 17–322(c) (Supp. 2007).

Thereafter, the Commission adopted, in a proposed order,[9] the ALJ's findings of fact, but rejected the ALJ's recom-

---

9.  Pursuant to Section 10–220(a)–(c) of the State Government Article, Maryland Code (1984, 2004 Repl.Vol.), "[w]ithin 60 days after receipt" of Office of Administrative Hearing's "proposed findings, conclusions, or order," an agency must review them, issue its own "proposed" decision or order, and send the proposed decision or order to the parties:

   (a) *Preparation.*—If the Office conducts a hearing under this subtitle, the Office shall prepare proposed findings of fact, conclusions of law, or orders in accordance with the agency's delegation under § 10–205 of this subtitle.

   (b) *Submission.*—The Office shall send its proposed findings, conclusions, or orders:

   (1) to the parties and the agency directly; or

   (2) if the agency's delegation under § 10–205 of this subtitle requires, to the agency for distribution by the agency to the parties.

   (c) *Review and issuance.*—(1)   Within 60 days after receipt of the Office's proposed findings, conclusions, or order under subsection (b)(2) of this section, the agency shall:

   (i) review the Office's proposed findings, conclusions, or order;

   (ii) issue the proposed decision, which may include the Office's proposed findings, conclusions, or order with or without modification; and

   (iii) send the proposed decision and a copy of the Office's proposed findings, conclusions, or order to the parties.

   (2) The time limit specified in paragraph (1) of this subsection may be extended by the agency head, board, or commission with written notice to the parties.

   Maryland Code (1984, 2004 Repl.Vol.), Section 10–220(a)–(c) of the State Government Article.   Among its required contents, an agency's proposed order must "include an explanation of procedures and time limits for filing exceptions," and an explanation "of the reasons for each change, modification, or amendment" of the OAH's proposed findings, conclusions, or order:

   (d) *Form and contents.*—A proposed decision or order, including proposed decisions or orders issued for contested case hearings subject to this subtitle but not conducted by the Office, shall:

   (1) be in writing or stated on the record;

   (2) contain separate findings of fact and conclusions of law;

   (3) include an explanation of procedures and time limits for filing exceptions; and

   (4) if the Office conducted the hearing and the agency's proposed decision includes any changes, modifications, or amendments to the Office's proposed findings, conclusions, or orders, contain an explanation of the reasons for each change, modification, or amendment.

mended sanction of a six-month suspension in favor of revocation. The Commission stated that it disagreed with the ALJ's recommendation for sanction for a number of reasons, to include that Mr. Pautsch had violated Section 17–322(b)(24)(i) of the Business Occupations and Professions Article under circumstances similar to those in *Attorney Grievance v. Thompson*, 367 Md. 315, 786 A.2d 763 (2001), which involved the discipline of an attorney after he was convicted of stalking a thirteen year-old boy and also advised Mr. Pautsch of his right to file exceptions. Thereafter, Mr. Pautsch did file exceptions to the Commission's proposed order,[10] which precipitated a hearing.[11] After the hearing on the exceptions was

---

Maryland Code (1984, 2004 Repl.Vol.), Section 10–220(d) of the State Government Article. All references to Section 10–220 of the State Government Article throughout are to Maryland Code (1984, 2004 Repl.Vol.), unless otherwise noted; the pertinent provisions remain unchanged.

**10.** Section 10–216(a) of the State Government Article, Maryland Code (1984, 2004 Repl.Vol.) states:

(a) *Notice of proposed decision; consideration of exceptions.*—(1) In the case of a single decision maker, if the final decision maker in a contested case has not personally presided over the hearing, the final decision may not be made until each party is given notice of the proposed decision in accordance with § 10–220 of this subtitle and an opportunity to:

(i) file exceptions with the agency to the proposed decision; and

(ii) present argument to the final decision maker that the proposed decision should be affirmed, reversed, or remanded.

All references to Section 10–216(a) of the State Government Article ("Section 10–216(a)") throughout are to Maryland Code (1984, 2004 Repl.Vol.), unless otherwise noted; the pertinent provisions remain unchanged.

**11.** Mr. Pautsch raised two written exceptions to the Commission's proposed order:

I. The Conclusions of Law, particularly the contention that Joel T. Pautsch's real estate broker's license must be revoked as a matter of law, of the MREC are without legal basis are [sic] clearly erroneous as a matter of law, and

II. The MREC's rejection of the Conclusions of Law and Recommended Order of the Administrative Law Judge are without legal basis, without merit, arbitrary and capricious, and constitutes an abuse of discretion.

The Commission, in its final order, summarized the arguments Mr. Pautsch raised at the exceptions hearing as follows:

held, during which Mr. Pautsch argued that the "Commission improperly considered only one of five factors in determining that Mr. Pautsch's license[s] should be revoked," the Commission issued a final order.

In its final order,[12] the Commission adopted the findings of the ALJ and began its analysis by summarizing evidence in the record relating to Mr. Pautsch's convictions:

> Counsel for Respondent argued that the Commission's rejection of the ALJ's Conclusions of Law and Recommended Order was arbitrary and capricious. He contended that the ALJ considered the correct factors and made an appropriate evaluation of criteria in recommending sanctions. Counsel further argued that the Commission was incorrect in determining that Mr. Pautsch's license must be revoked as a matter of law. He alleged that the Commission improperly considered only one of five factors in determining that Mr. Pautsch's license should be revoked.

**12.** Section 10–221 of the State Government Article, Maryland Code (1984, 2004 Repl.Vol.) sets forth the form, contents, and distribution of an agency's final order:

(a) *Form.*—A final decision or order in a contested case that is adverse to a party shall be in writing or stated on the record.

(b) *Contents.*—(1) A final decision or order in a contested case, including a remand of a proposed decision, shall contain separate statements of:

(i) the findings of fact;

(ii) the conclusions of law; and

(iii) the order.

(2) A written statement of appeal rights shall be included with the decision.

(3) If the findings of fact are stated in statutory language, the final decision shall state concisely and explicitly the facts that support the findings.

(4) If, in accordance with regulations, a party submitted proposed findings of fact, the final decision shall state a ruling on each proposed finding.

(c) *Distribution.*—The final decision maker promptly shall deliver or mail a copy of the final decision or order to:

(1) each party; or

(2) the party's attorney of record.

All references to Section 10–221 of the State Government Article throughout are to Maryland Code (1984, 2004 Repl.Vol.), unless otherwise noted; the pertinent provisions remain unchanged.

Regarding exceptions, the Commission must abide by the following regulations:

A. The administrative unit shall issue its final order within 90 days after the date of the hearing on exceptions.

On January 29, 2007, the Respondent was convicted of two felony counts, sex abuse of a minor and child abuse by a family member, in the Circuit Court for Anne Arundel County. The victims of his abuse were his daughter and his niece. The first count to which the Respondent pled guilty, child abuse by a family member of the child, covered a time period from April 27, 1988 through April 27, 1991 (Case No. K–2007–140). The second count to which he pled guilty, sex abuse of a minor, the respondent being the parent of the minor, was count three of the information in Case No. K–2006–1728 and covered the time from October 1, 2003 through January 20, 2006. He was sentenced on March 23, 2007 in the case involving his niece to four years in jail with three years suspended. He was to serve four months in the Anne Arundel County Detention Center, with the remaining eight months on house arrest. He was placed on probation for five years. One of the terms of probation was that he have no unsupervised encounters with children. He was sentenced on the same day in the case involving his daughter to three years in jail, consecutive to the jail sentence in the other case, with the jail time suspended, and the same terms of probation.

According to the police report of investigation (Commission's Exhibit # 6), the Respondent admitted to inappropriate contact with his daughter on a number of occasions, as well as with two nieces, with one niece two to three years before the interview and with the second niece a number of years earlier.

B. The administrative unit may affirm, reverse, or modify the proposed order, or may remand the matter with specific instructions to the Office of Administrative Hearings.

C. The administrative unit shall send a copy of the final order to the parties, or if represented by counsel to their attorneys, by first-class mail within 3 business days from the date of the issuance of the final order.

D. The final order or an accompanying letter shall advise the parties of their rights to judicial review of the decision.

COMAR 09.01.03.10.

Thereafter, the Commission, in its final order, found that Mr. Pautsch violated Section 17–322(b)(24)(i) of the Business Occupations and Professions Article relating to the effect of a conviction of a felony and discussed the ALJ's rationale for recommending a six-month suspension of his license:

It is clear from the records that Respondent violated Section 17–322(b)(24)(i) Business Occupations and Professions ("BOP") Article, *Annotated Code of Maryland.* The question for the Commission is what the appropriate sanction should be. The ALJ recommended a six-month suspension of the Respondent's license based on her finding that there was no nexus between the felonies committed and the activities the Respondent would perform under his real estate license. She noted that he had no prior complaints against him with the Commission, and had not committed any illegal acts in the course of the real estate business. She also noted that he was involved in counseling, therapy, and recovery groups and found that he was credible in his assurance that he would continue in those activities.

In framing its analysis, the Commission stated that it "must look to five factors in determining what will be an appropriate sanction," as mandated by Section 17–322(d) of the Business Occupations and Professions Article, Maryland Code (1989, 2004 Repl.Vol.): [13]

(d) *Facts considered.*—The Commission shall consider the following facts in the granting, denial, renewal, suspension, or revocation of a license or the reprimand of a licensee when an applicant or licensee is convicted of a felony or misdemeanor described in subsection (b)(24)(i) and (ii) of this section:

(1) the nature of the crime;

(2) the relationship of the crime to the activities authorized by the license;

---

**13.** All references to Section 17–322(d) of the Business Occupations and Professions Article ("Section 17–322(d)") throughout are to Maryland Code (2000, 2004 Repl.Vol.), unless otherwise noted; the pertinent provisions remain unchanged.

(3) with respect to a felony, the relevance of the conviction to the fitness and qualification of the applicant or licensee to provide real estate brokerage services;

(4) the length of time since the conviction; and

(5) the behavior and activities of the applicant or licensee before and after the conviction.

The Commission emphasized the similarity in the circumstances and implications of Mr. Pautsch's child abuse and sex abuse crimes with that in *Thompson*, which also did not occur while the attorney was representing a client:

> In rendering the Recommended Decision, the ALJ rejected the Commission's citation of the case of *Attorney Grievance Commission v. Thompson*, 367 Md. 315, 786 A.2d 763 (2001), based on the argument of Respondent's counsel that the attorney was stalking a child in predatory fashion while his client was not a threat, a risk, or a predator. However, this distinction does not go to the holding of the Court of Appeals' decision, which the Commission finds controlling in this case.

> In the *Thompson* case, the respondent attorney had been convicted of stalking a thirteen-year old boy in violation of the Montgomery County Code. He was sentenced to six months incarceration, with all time suspended, three years probation, one hundred hours of community service and a $1,000 fine. The violation did not involve or occur during his representation of a client, and his plan for his future legal practice tended "to minimize the potential for interactions with children directly as clients." *Id.* at 323, 786 A.2d 763. The Circuit Court Judge who heard the case recommended to the Court of Appeals that the complaint be dismissed in part because "the Respondent's conduct did not 'evince a character trait relevant or critical to the practice of law,' and therefore, did not 'reflect[ ] adversely on his fitness as a lawyer.' " *Id.* at 321, 786 A.2d 763.

> The Court of Appeals looked instead to the nature of the offense committed, and concluded that the attorney's actions did "not resemble, by any standard, those of a responsible,

mature, and trustworthy adult, and clearly violated the unquestioned limits of appropriate adult-child interactions." *Id.* at 325, 786 A.2d 763.

The Commission reasoned that Mr. Pautsch's crimes, like that in *Thompson,* involved preying on the vulnerabilities of a child:

> The crimes committed by the Respondent involve adult-child interactions. As such, these interactions must be reviewed with close scrutiny. As stated by the Court in *Thompson, Id.* at 327 [786 A.2d 763]: "Because of the disparities of power, intellect, maturity, and judgment between the two, children are often without the resources and capabilities, both mentally and physically, to protect themselves from harm. The burden, therefore, is on the adult to act responsibly in his or her interactions with children to preserve their best interests, not to prey on their innocence." As in *Thompson,* the Commission finds that the criminal activities of the Respondent do not resemble those of a responsible, mature, and trustworthy adult, and clearly violated the unquestioned limits of appropriate adult-child interaction. *Id.* at 325 [786 A.2d 763].

Insofar as the second, obviously pivotal to our analysis, aspect, that being the relationship of the crime to the activities authorized by the license, the Commission determined that Mr. Pautsch "may come into contact with unsupervised children during the course of activities authorized by a real estate license" due to the use of "lock box" [14] systems:

> The second factor is the relationship of the crime to the activities authorized by the license. Because a real estate license allows an individual access to private homes, and to the residents of those homes, the Commission must take an especially close look at licensees who have been convicted of crimes related to children. Although the Respondent was

---

**14.** A "lock-box" system "permits the listing brokers and their subagents access to the listed property's keys (found in an agreed upon lock-box) and entry to the property." D. Barlow Burke, Jr., *Law of Real Estate Brokers* § 4.05, at 4–43 (3d. ed 2007).

convicted of crimes involving family members, the Commission is nonetheless cognizant of the fact that the Respondent may come into contact with unsupervised children during the course of activities authorized by a real estate license such as use of the "lock box" system.

The Commission also emphasized that the concept of trust, as articulated in *Thompson*, affected their conclusion regarding nexus:

The Commission must also look to the element of trust, as the Court of Appeals did in *Thompson*. Finding that the attorney's conduct showed that he could not be trusted around children, the Court said, "The concept of trust is an inseparable element of any attorney's practice. It is inconceivable, therefore, how we may authorize and trust Respondent with the enumerable confidential, fiduciary, and trust-based relationships that attorneys, by their profession, are required to maintain in their dealings with their client or the public." *Id.* at 327 [786 A.2d 763]. Real estate licensees similarly owe a duty of trust to the public they serve in a number of ways: handling of monies entrusted by a party to a transaction; keeping the confidences of their clients; treating all parties to the transaction fairly; and protecting the public against fraud, misrepresentation or unethical practices in the real estate field. The Commission concludes that Mr. Pautsch's history of untrustworthy behavior with children, over a fifteen-year period, goes directly to his trustworthiness and thus negatively affects his ability to engage in activities authorized by a real estate license.

(footnote omitted).

Regarding the third factor, the Commission determined that Mr. Pautsch's convictions negatively impacted his fitness and qualifications to "provide real estate brokerage services," citing several other of this Court's attorney grievance decisions for the proposition that professional licenses could be indefinitely suspended or revoked "based on criminal conduct which is not directly related to the profession which is licensed":

The third factor is the relevance of the conviction to the fitness and qualifications of the licensee to provide real estate brokerage services. A licensee is required to be of good character and reputation in order to hold a license. See § 17–305(b) BOP Article, *Annotated Code of Maryland.* Although Respondent and his witnesses have argued that he is not a threat to the community and that his crimes were not related to his fitness and qualifications to provide real estate services, the commission notes a number of Maryland cases where license holders have been indefinitely suspended or revoked based on criminal conduct which is not directly related to the profession which is licensed. See *Thompson, op. cit; Attorney Grievance Commission v. Painter,* 356 Md. 293 [739 A.2d 24] (1977) [ (1999) ]; *Attorney Grievance Commission v. Lazerow,* 320 Md. 507 [578 A.2d 779] (1990); *Attorney Grievance Commission v. Dechowitz,* 358 Md. 184 [747 A.2d 657] (2000); *Attorney Grievance Commission v. Childress,* 360 Md. 373 [758 A.2d 117] (2000).

With respect to the fourth factor, the Commission reasoned that the length of time of Mr. Pautsch's abuse of children coupled with the brevity in the amount of time since his convictions were considerations that affected their decision to revoke:

The fourth factor to be considered is the length of time since the conviction. The Respondent was convicted on January 29, 2007 for sexual abuse incidents which had occurred over a period of fifteen years. He has pleaded guilty to abusing his own daughter over a three-year period. Less than two years time has elapsed since the Respondent's conviction. After serving a term of confinement of four months and eight months of house arrest, he began his five-year probationary period. He is currently on probation and will remain on that status for several more years. It has been the practice of the Commission not to give a license to a convicted felon until that person has been on probation for a long enough period of time to give the Commission confidence that he or she has shown satisfacto-

ry compliance with the terms ordered by the judge. *In the Matter of the Application of Enoch Moon* (Case No.2007–RE–695; *In the Matter of the Application of Hugh N. Addo* (Case No. 05–594425); *In the Matter of the Application of Joerg Eichelberger* (Case No.2005–RE–2610).

Relatedly, the Commission also determined that Mr. Pautsch had a behavioral pattern of re-offending:

> The Commission also notes the long period of time over which the Respondent committed acts of abuse. His illegal conduct extended over a period of more than fifteen years based on the counts to which he pled guilty. Furthermore, according to the police report of investigation, in 2002 he had "apologized" to one of his nieces for his earlier abuse of her. However, he pled guilty to sexually abusing his own child from 2003 to 2006, subsequent to the "apology". Based on this history, the Commission believes that a significantly longer period of time is required to assure itself, and the public, that the Respondent has "recovered" and will continue to comply with the terms ordered by the judge.

In analyzing the fifth factor mandated by Section 17–322(d) of the Business Occupations and Professions Article, the Commission discussed Mr. Pautsch's efforts to rehabilitate himself through treatment programs, but placed those efforts in the context of his "violat[ing] the most basic trust and duty of a parent to preserve the best interests of his child":

> The fifth factor to be considered is the behavior and activities of the licensee before and after the conviction. The ALJ credited the Respondent with taking responsibility for his actions and pleading guilty, and cited the counseling and treatment in which he was engaged. The Commission accepts the ALJ's findings in this regard, but believes that they do not outweigh the other four factors outlined above. As already noted, the Respondent has demonstrated a pattern of sexual abuse over a fifteen-year period. As a result of that abuse, he violated the most basic trust and duty of a parent to preserve the best interests of his child, not to prey

on her innocence. Evidence before the Commission indicates that he is currently involved in therapy and recovery programs and the Commission notes his apparent affirmative response to treatment; however, it does not find it determinative, of itself, here.

(footnote omitted).

The Commission summarized its conclusions and ultimately determined that Mr. Pautsch's "real estate license should be revoked":[15]

After weighing all five factors, the Commission concludes that Mr. Pautsch's criminal convictions are serious in na-

---

**15.** The Commission's final order concluded:

Based on the Findings of Fact and Discussion, the Maryland Real Estate Commission reaches the following Conclusions as a matter of law:

1. On January 29, 2007, the Respondent pled guilty to the felony charges of Sex Abuse of a Minor and Child Abuse in the Anne Arundel County Circuit Court.

*       *       *

2. The Commission may revoke the license of an individual who has been convicted of a felony. Section 17–322(b)(24)(i), BOP Article, *Annotated Code of Maryland.*

3. Based on its evaluation of the nature of the crime of which Mr. Pautsch was convicted, the relationship of the crime to the role and function of a real estate license; the relevance of the convictions to Mr. Pautsch's fitness and qualifications to provide real estate brokerage services; the length of time since the conviction; and Mr. Pautsch's behavior and activities before and after the convictions, the Commission concludes that it is not in the public interest, which is paramount under Section 17–207, BOP Article, *Annotated Code of Maryland* to permit Mr. Pautsch to retain licensure with the Maryland Real Estate Commission.

**ORDER**

Argument on the Exceptions filed by the Respondent, Joel T. Pautsch, having been heard on October 28, 2008, it is this 1st day of December, 2008, by the Maryland Real Estate Commission **ORDERED,**

A. That the Respondent, Joel T. Pautsch, violated § 17–322(b)(24)(i) BOP Article, Annotated Code of Maryland;

B. That all real estate licenses held by the Respondent, Joel T. Pautsch, be **REVOKED,**

C. That the records and publications of the Maryland Real Estate Commission reflect this decision.

ture, undermine his trustworthiness in dealing with the public during the course of providing real estate brokerage services, and negatively impact his character and reputation. He abused both his niece and daughter over a lengthy period of time; is not far removed in time from the last incident of abuse; and has not yet established a sufficient history of recovery.

Therefore, the Commission has concluded that the Respondent's real estate license should be revoked. If, at some time in the future, he is able to show a "track record sufficient to restore a level of trustworthiness and fitness" to hold a real estate license, he may reapply. *Thompson*, 367 Md. at 332, 786 A.2d at 774.

### Discussion

■■■■ Section 10–222(a) of the State Government Article provides that "a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision." Section (h) of 10–222 sets forth the scope of judicial review of the final order of an agency:

(h) *Decision.*—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

In reviewing the factual findings of the Commission and its sanction, we adhere to the tenets articulated in *Maryland Aviation Administration v. Noland,* 386 Md. 556, 873 A.2d 1145 (2005):

> A court's role in reviewing an administrative agency adjudicatory decision is narrow; it is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

> In applying the substantial evidence test, a reviewing court decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court must review the agency's decision in the light most favorable to it; ... the agency's decision is *prima facie* correct and presumed valid, and ... it is the agency's province to resolve conflicting evidence and to draw inferences from that evidence.

> Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is *not* to substitute its judgment for the expertise of those persons who constitute the administrative agency, Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected.

> \* \* \*

> ██ [N]o statutory provision or Court of Appeals administrative law opinion has been called to our attention which requires that the imposition of a lawful and authorized sanction, within the discretion of the administrative agency, be justified by findings of fact.... [C]ourts owe a higher level of deference to functions specifically committed to the

agency's discretion than they do to an agency's legal conclusions or factual findings. Therefore, the discretionary functions of the agency must be reviewed under a standard more deferential than ... the substantial evidence review afforded any agency's factual findings.

*     *     *

In sum, when the discretionary sanction imposed upon an employee by an adjudicatory administrative agency is lawful and authorized, the agency need not justify its exercise of discretion by findings of fact or reasons articulating why the agency decided upon the particular discipline. A reviewing court is not authorized to overturn a lawful and authorized sanction unless the disproportionality [of the sanction] or abuse of discretion was so extreme and egregious that the reviewing court can properly deem the decision to be arbitrary or capricious. Furthermore, the employing agency does not have the burden, in the reviewing court, of justifying such a sanction. Instead, in accordance with the principle that the agency's decision is prima facie correct and presumed valid, the burden in a judicial review action is upon the party challenging the sanction to persuade the reviewing court that the agency abused his discretion and that the decision was so extreme and egregious that it constituted arbitrary or capricious agency action.

*Id.* at 571–572, 580–81, 873 A.2d at 1154–55, 1159–60 (footnotes omitted) (citations omitted) (internal quotation marks omitted).

With respect to his first certiorari question, Mr. Pautsch argues that the Commission concluded, without substantial evidence, that there was a nexus between his criminal convictions and his position as a real estate professional, as required by Section 17–322(d)(2) of the Business Occupations and Professions Article, which states:

(d) *Facts considered.*—The Commission shall consider the following facts in the granting, denial, renewal, suspension, or revocation of a license or the reprimand of a licensee when an applicant or licensee is convicted of a felony or

misdemeanor described in subsection (b)(24)(i) and (ii) of this section:

\* \* \*

(2) the relationship of the crime to the activities authorized by the license;

(3) with respect to a felony, the relevance of the conviction to the fitness and qualification of the applicant or licensee to provide real estate brokerage services[.]

In addition, Mr. Pautsch insists that our decision must take into account the "policy of the State to encourage employment of nonviolent ex-offenders," pursuant to Section 1–209(c) of the Criminal Procedure Article, which provides:

(c) *State policy.*—It is the policy of the State to encourage the employment of nonviolent ex-offenders and remove barriers to their ability to demonstrate fitness for occupational licenses or certifications required by the State.

Maryland Code (2001, 2008 Repl.Vol., 2009 Supp.).[16] Further, Mr. Pautsch asserts that the Commission could not revoke his licenses, unless "there [was] a direct relationship between [his] previous conviction and [his] specific occupational license," pursuant to Section 1–209(d) of the Criminal Procedure Article, which states:

(d) *Prohibition; exception.*—A department may not deny an occupational license or certificate to an applicant solely on the basis that the applicant has previously been convicted of a crime, unless the department determines that:

(1) there is a direct relationship between the applicant's previous conviction and the specific occupational license or certificate sought; or

(2) the issuance of the license or certificate would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

---

**16.** All references to Section 1–209 of the Criminal Procedure Article throughout are to Maryland Code (2001, 2008 Repl.Vol., 2009 Supp.), unless otherwise noted; the pertinent provisions remain unchanged.

In deriving a nexus between Mr. Pautsch's convictions and the activities engendered under his real estate license, the Commission found convincing the fact that Mr. Pautsch's real estate licenses allow "access to private homes, and to the residents of those homes" by virtue of a "lock box" system:

> Because a real estate license allows an individual access to private homes, and to the residents of those homes, the Commission must take an especially close look at licensees who have been convicted of crimes related to children. Although the Respondent was convicted of crimes involving family members, the Commission is nonetheless cognizant of the fact that the Respondent may come into contact with unsupervised children during the course of activities authorized by a real estate license such as use of the "lock box" system.

As reflected in the transcript of the administrative hearing before the ALJ, which the Commission entered into evidence,[17] Mr. Pautsch testified that, when he "show[s] homes, people are typically not there," and that he uses a "key lock box that registers [him] at the house" to do so:

> When I show homes, people are typically not there. If they are there, they're there with adults. When I do show houses I have to make an appointment with them and I have to use a key lock box that registers me at the house and so there's not even an opportunity without being incriminated to ever have contact with children.

Mr. Pautsch, however, asserts that because the record is "absolutely devoid of any testimony or documentary evidence that refers to or explains the lock box system," the Commission could not rely on the lock box system as one of its considerations. In essence, he argues that there needed to be

---

17. In a section of its final order captioned "Summary of the Evidence," the Commission stated:

> On behalf of the Commission, seven exhibits, including the file from the hearing before the ALJ were entered into evidence, all of which were accepted. The Respondent entered one exhibit into evidence which was accepted.

expert or other testimony adduced to apprise the Real Estate Commission regarding how a lock box and its myriad iterations operate.

In *Noland*, however, we recognized our longstanding practice of respecting an agency's expertise "in its own field" when we conduct our review of its decisions. 386 Md. at 572, 873 A.2d at 1154–55. In the instant case, it is difficult to comprehend how the Commission, as the regulatory body for the real estate profession in Maryland, is not specially equipped to comprehend the functionality of lock box systems, notwithstanding allegations that the systems are multifaceted, especially because, of the Commission's nine members, five are licensed real estate professionals. *See* Maryland Code (2000, 2004 Repl.Vol.), Section 17–202(a) of the Business Occupations and Professions Article.

Mr. Pautsch also disputes the Commission's reliance on our decision in *Thompson*, 367 Md. at 315, 786 A.2d at 763, in which we indefinitely suspended an attorney after he had been convicted of stalking a thirteen-year old boy, albeit not within the framework of his law practice. Specifically, Mr. Pautsch asserts that the legal profession is governed by higher standards of conduct than the real estate profession, and thus, that the Commission was not at liberty, whatsoever, to consult our attorney grievance jurisprudence for guidance. In its brief, the Commission responds that, like lawyers, real estate professionals "practice in a very public context and, once licensed, bear the imprimatur of the State," and that our attorney grievance jurisprudence "provides standards that can be applied to real estate brokers, as persuasive authority if not as direct precedent."

The Commission, in its final order, embraced the reasoning contained in *Thompson*, because Mr. Thompson's conviction of stalking a thirteen-year old boy did not "involve or occur during his representation of a client," and his plan for his future legal practice tended to "minimize the potential for interactions with children directly as clients," *Thompson*, 367 Md. at 323, 786 A.2d at 768, as compared to Mr. Pautsch's

convictions, which did not occur during the exercise of his duties as a real estate professional. The Commission's finding that Mr. Pautsch's convictions for child abuse were analogous to those in *Thompson* was based on Exhibit # 6 before the Commission, which was summarized as follows:

> According to the police report of investigation (Commission's Exhibit # 6), the Respondent admitted to inappropriate contact with his daughter on a number of occasions, as well as with two nieces, with one niece two to three years before the interview and with the second niece a number of years earlier.

The Commission found it significant that the *Thompson* opinion analyzed the character traits that were lacking when a professional committed child stalking:

> The Circuit Court Judge who heard the case recommended to the Court of Appeals that the complaint be dismissed in part because "the Respondent's conduct did not 'evince a character trait relevant or critical to the practice of law', and therefore, did not 'reflect[ ] adversely on his fitness as a lawyer.'" *Id.* at 321 [786 A.2d 763]. The Court of Appeals looked instead to the nature of the offense committed, and concluded that the attorney's actions did "not resemble, by any standard, those of a responsible, mature, and trustworthy adult, and clearly violated the unquestioned limits of appropriate adult-child interaction." *Id.* at 325 [786 A.2d 763].

Looking again to *Thompson*, the Commission found that Mr. Pautsch's exploitation of the "disparities of power, intellect, maturity, and judgment" between himself and minor children reflected an unqualified lack of responsibility, maturity, and trustworthiness:

> As stated by the Court in *Thompson, Id.* at 327 [786 A.2d 763]: "Because of the disparities of power, intellect, maturity, and judgment between the two, children are often without the resources and capabilities, both mentally and physically, to protect themselves from harm. The burden, therefore, is on the adult to act responsibly in his or her

interactions with children to preserve their best interests, not to prey on their innocence." As in *Thompson,* the Commission finds that the criminal activities of the Respondent do not resemble those of a responsible, mature, and trustworthy adult, and clearly violated the unquestioned limits of appropriate adult-child interaction. *Id.* at 325, 786 A.2d 763.

According to the Commission, Mr. Pautsch's case "present[ed] a more compelling case for discipline than *Thompson,*" because Mr. Pautsch actually sexually abused children.

Referring to our analysis in *Thompson,* 367 Md. at 315, 786 A.2d at 763, the Commission analogized Mr. Thompson's ability to engage in "trust-based relationships" in the legal profession after being convicted of victimizing a minor child to Mr. Pautsch's ability to engage in trust-based relationships in the real estate profession after doing the same.[18] The Commission noted that, in *Thompson,* we determined that "the concept of trust" was an "inseparable element of any attorney's

---

**18.** Relatedly, Mr. Pautsch asserts that, because the Commission did not find that he violated Section 17–322(b)(25) of the Business Occupations and Professions Article, which forbids a real estate professional from participating in "conduct that demonstrates bad faith, incompetency, or untrustworthiness or that constitutes dishonest, fraudulent, or improper dealings," it was prevented from nevertheless concluding that he could not be trusted with a real estate license. As noted by the Court of Special Appeals, however, Mr. Pautsch has improperly characterized the grounds for sanction in Section 17–322 as mutually exclusive:

> Appellant's argument fails because it depends on a mutual exclusion that does not exist. The word "or" at the end of § 17–322(b)(34) clearly indicates that all enumerated subsections of BOP § 17–322(b) are independent grounds upon which the Commission may revoke a broker's license. Appellant's proffered interpretation is erroneous, for it would imply that a felony which "demonstrates bad faith, incompetency, or untrustworthiness or that constitutes dishonest, fraudulent, or improper dealings" could not be grounds for license revocation as a "felony" in § 17–322(b)(24)(i) and would only fall under the broad language of § 17–322(b)(25). There is no need to interpret these provisions so that § 17–322(b)(24)(i) excludes felonies that could also fall within § 17–322(b)(25). Moreover, under Appellant's theory, the highly relevant factors of § 17–322(d) could not apply to these felonies because they apply only to "a felony or misdemeanor described in subsection (b)(24)(i) and (ii) of this section."

practice" and that it was "inconceivable ... how we may authorize and trust [Mr. Thompson] with the enumerable confidential, fiduciary, and trust-based relationships that attorneys, by their profession, are required to maintain in their dealings with their client or the public." *Id.* at 327, 786 A.2d at 771. Comparing Mr. Pautsch's crimes with that in *Thompson,* the Commission similarly determined that Mr. Pautsch's "history of untrustworthy behavior with children, over a fifteen-year period, goes directly to his trustworthiness and thus negatively affects his ability to engage in activities authorized by a real estate license." The Commission found that the real estate profession, like the legal profession, entailed several duties to clients and the public alike:

> Real estate licensees similarly owe a duty of trust to the public they serve in a number of ways: handling of monies entrusted by a party to a transaction; keeping the confidences of their clients; treating all parties to the transaction fairly; and protecting the public against fraud, misrepresentation or unethical practices in the real estate field.

With respect to the issue of nexus, the Commission also found that Mr. Pautsch's child abuse convictions negatively impacted Mr. Pautsch's fitness to be a real estate professional. In so doing, the Commission referred to Section 17–305(b) of the Business Occupations and Professions Article, which states that a real estate professional "shall be of good character and reputation," and referred to various attorney grievance cases, including *Thompson,* in which this Court determined that misconduct which was not directly related to the practice of law nevertheless bore negatively upon an attorney's fitness to practice.[19] In *Attorney Grievance v. Childress,* 360 Md. 373,

---

**19.** Mr. Pautsch asserts that the following cases are more on point than *Thompson,* 367 Md. 315, 786 A.2d 763 (2001); his reliance is unavailing, however.

Mr. Pautsch argues that *Dearborn v. Real Estate Agency,* 334 Or. 493, 53 P.3d 436 (2002) should influence our review of the nexus requirement because the Supreme Court of Oregon refused to revoke the license of a real estate professional for drug-related possession convictions. Within two years, however, the Supreme Court of Oregon, in

758 A.2d 117 (2000), for instance, the Commission found

*Kerley v. Real Estate Agency,* 337 Or. 309, 96 P.3d 1211 (2004) affirmed the revocation of the license of a real estate professional for convictions unrelated to his work as an agent and broker, thereby limiting the *Dearborn* analysis.

Mr. Pautsch also proffers the case of *In the Matter of Dillingham,* 257 N.C. 684, 127 S.E.2d 584 (1962) for the proposition that a conviction for operating a disorderly house (prostitution) was unrelated to his licensure as a real estate broker. The court, under the statute in effect at the time, determined that revocation of the license was not appropriate. Subsequently, under a statute that spoke more to the Maryland statutory scheme in issue here, the Court revoked the license of a real estate professional, and noted "In *Dillingham,* the Court found the words 'any of the acts mentioned herein' must mean 'the acts of a real estate broker or real estate salesman *for which a license is required* '. . . . A license is required in order to sell or offer to sell, buy or offer to buy any real estate. N.C.G.S. Sec. 93A–2. That the current statute omits the words 'any of the acts mentioned herein' is significant: unless the specific provision provides otherwise, the amended statute permits the Commission to suspend or revoke a license issued pursuant to N.C.G.S. Sec. 93A–4 for any of the acts enumerated in N.C.G.S. Sec. 93A–6(a)1–12 without regard to whether the acts were connected in any way with the pursuit of the licensed privilege of a real estate broker or salesman." *Watson v. North Carolina Real Estate Comm'n,* 87 N.C.App. 637, 362 S.E.2d 294, 301 (1987), *cert. denied,* 321 N.C. 746, 365 S.E.2d 296 (1988).

Mr. Pautsch also refers us to *Missouri Real Estate Commission v. Berger,* 764 S.W.2d 706 (Mo.App.1989) as identical to his case. Mr. Berger had been convicted of conspiracy to distribute cocaine in federal court, but the only evidence before the ALJ was the conviction itself and nothing beyond, even with regard to Mr. Berger's participation in the crime. Such is not the case here.

Another case Mr. Pautsch poses as influential is *Powell v. Paine,* 221 W.Va. 458, 655 S.E.2d 204 (2007), in which a public high school teacher was charged with felony child abuse for beating his son and pled guilty to one count of domestic battery. Thereafter, the Superintendent of Schools recommended to the county board of education that his teaching license be suspended pursuant to a statute which required "a *rational nexus* between the conduct of the teacher and the performance of his or her job." *Id.* at 208. The board upheld the suspension. The Supreme Court of Appeals of West Virginia reversed, determining that there was no finding regarding "how Appellant's cruelty toward his son can, will or even may be anticipated to affect Appellant's performance of his school job," and the record was devoid of any evidence of nexus. *Id.* at 210–11. Again, such is not the case here.

Mr. Pautsch also refers us to *Brewer v. Department of Motor Vehicles,* 93 Cal.App.3d 358, 155 Cal.Rptr. 643 (1979), in which the California intermediate appellate court determined that there was no proof of nexus between the conviction for annoying and molesting children and fitness to sell cars. The only evidence was Mr. Brewer's conviction for the crime without more. Again, such is not the situation in the present case.

persuasive that this Court deemed an attorney's solicitation of sex over the internet with who he believed to be minor girls "likely to impair public confidence in the profession, [have] an impact on the legal profession, and engender disrespect for the court," *Id.* at 386, 758 A.2d at 123, despite Mr. Childress's claim that his "conduct was purely personal" and "unrelated to the practice of law." *Id.* at 381–82, 758 A.2d at 121. The Commission also found instructive that, in *Attorney Grievance v. Dechowitz*, 358 Md. 184, 747 A.2d 657 (2000), this Court determined that an attorney's conviction for possession with intent to distribute marijuana was "a criminal act that reflects adversely on his honesty, trustworthiness or fitness as a lawyer in other respects." *Id.* at 190, 747 A.2d at 660. Further, as it bore on its determination of nexus, the Commission found useful our decision in *Attorney Grievance v. Painter*, 356 Md. 293, 739 A.2d 24 (1999), in which we characterized an attorney's convictions on handgun and battery charges "as prejudicial to the administration of justice and maybe even as impacting adversely that attorney's fitness to practice law." *Id.* at 305, 739 A.2d at 31. Similarly, the Commission was influenced by our decision in *Attorney Grievance Comm'n v. Lazerow*, 320 Md. 507, 578 A.2d 779 (1990), in which we disbarred a non-practicing attorney for "us[ing] in excess of $ 200,000 of home purchasers' down payments, statutorily required to be held in escrow accounts, to pay bills" in connection with his construction of low income housing. *Id.* at 508, 578 A.2d at 779.

Clearly, there was substantial evidence upon which the Commission relied to support its finding that there was a nexus between Mr. Pautsch's convictions and his professional activities.

Relatedly, however, Mr. Pautsch asserts that Section 1–209 of the Criminal Procedure Article, Maryland Code (2001, 2008 Repl.Vol., 2009 Supp.) precluded the Commission from revoking Mr. Pautsch's license because that statute requires a "direct relationship" to be shown between the convictions and a "specific occupational license." Mr. Pautsch argues that this statute establishes the policy of the State to require a direct

relationship. The Commission responds that Section 1–209 is inapplicable in this case.

Mr. Pautsch has raised Section 1–209 of the Criminal Procedure Article for the first time in these judicial review proceedings before this Court, even though the statute became effective on October 1, 2009, some five months before he briefed the issues in the Court of Special Appeals. Therefore, any consideration of Section 1–209 may not be preserved.

Even were we to address Mr. Pautsch's argument regarding the statute, however, Section 1–209 was not in effect at the time that Mr. Pautsch's licenses were revoked. Thus, retroactivity would be implicated, and we have long adhered to four principles in such matters:

> (1) statutes are presumed to operate prospectively unless a contrary intent appears; (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective; (3) a statute will be given retroactive effect if that is the legislative intent; but (4) even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws.

*State Ethics Comm'n v. Evans*, 382 Md. 370, 381, 855 A.2d 364, 370 (2004), quoting *Allstate Insurance Co. v. Kim*, 376 Md. 276, 289, 829 A.2d 611, 618 (2003). We have distilled the above principles into a two-part test:

> First, we must determine whether the Legislature intended the statute to have the kind of retroactive effect that is asserted. That implicates the first and third principles. Applying the presumption of prospectivity, a statute will be found to operate retroactively only when the Legislature 'clearly expresses an intent that the statute apply retroactively.'

> *           *           *

If we conclude that the Legislature *did* intend for the statute to have retroactive effect, we must then examine whether such effect would contravene some Constitutional

right or prohibition. That implicates the second and fourth principles.

*Evans,* 382 Md. at 381–82, 855 A.2d at 370, quoting *Kim,* 376 Md. at 289–90, 829 A.2d at 618–19. The presumption against retroactivity is rebutted only when there are "clear expressions in the statute to the contrary" by way of "express language or necessary implication." *McHale v. DCW Dutchship Island, LLC,* 415 Md. 145, 159, 999 A.2d 969, 977 (2010) (internal citations omitted). Moreover, "a statute, though applied only in legal proceedings subsequent to its effective date and in that sense, at least, prospective, is, when applied so as to determine the legal significance of acts or events that occurred prior to its effective date, applied retroactively." *Kim,* 376 Md. at 289–90, 829 A.2d at 618–19, quoting *State Comm'n on Human Rel. v. Amecom Division,* 278 Md. 120, 123, 360 A.2d 1, 3–4 (1976). Thus, "[c]ontext becomes important." *Id.* Mr. Pautsch, however, cites us to nothing in the legislative record, nor have we found anything in that record, that would rebut the presumption against retroactivity.

■ We note, finally, that the policy implicated by Section 1–209 of the Criminal Procedure Article does not apply to Mr. Pautsch, as he is not a "nonviolent ex-offender" as the statute demands. Section 1–209(b) expressly excludes convictions for crimes of violence "as defined in § 14–101 of the Criminal Law Article" from its coverage. Section 14–101(a)(16) of the Criminal Law Article, Maryland Code (2002, 2007 Supp.), defines "crime of violence" as including "sexual abuse of a minor," for which Mr. Pautsch stands convicted.

■ Mr. Pautsch, in his second certiorari question, asserts that the revocation of his licenses was arbitrary and capricious.[20] He asserts that the Commission's adoption of the

---

**20.** Initially, Mr. Pautsch asserts that the sanction given in *Thompson,* 367 Md. at 315, 786 A.2d at 763, that of an indefinite suspension, was not the same sanction given him by the Commission, revocation. Section 17–322(b) of the Business Occupations and Professions Article, however, does not authorize the Commission to "indefinitely suspend" a real estate professional's license.

ALJ's mitigating findings of fact, coupled with nothing "to refute these findings," precluded the Commission from departing from the ALJ's recommended sanction of a six month suspension.[21] The Commission responds that, as a discretionary matter, it was entitled to determine that Mr. Pautsch's mitigating evidence was unavailing to overcome the "Commission's overriding responsibility to protect the public." [22]

In *Noland,* 386 Md. at 556, 873 A.2d at 1145, we reviewed the Maryland Aviation Administration's termination of the employment of a paramedic, who had twice struck a combative psychiatric prisoner with a closed fist. The ALJ from the Office of Administrative Hearings found that Mr. Noland had not violated the "Management's Workplace Violence Policy," because he " 'did not strike the Patient out of anger, but rather to prevent or reduce possible exposure to an infectious disease,' " and his " 'actions were not done for the purpose of intimidation, or for the purpose of harming, damaging, or causing injury to persons or property.' " *Id.* at 562, 873 A.2d at 1149. The ALJ recommended a sanction of suspension rather than termination, in part, because Mr. Noland had never been

---

**21.** Relatedly, Mr. Pautsch asserts that *Attorney Grievance v. Marcalus,* 414 Md. 501, 996 A.2d 350 (2010) is relevant to the issue of sanction, because Mr. Pautsch "confessed his indiscretion," "asked for forgiveness," and was not deemed "a threat to the community" by his board certified sex therapist. The suggestion appears to be that the existence of mitigation *per se* always requires a lesser sanction, which is not valid. We have disbarred attorneys in the face of mitigating evidence. See *Attorney Grievance v. Coppola,* 419 Md. 370, 397–401, 19 A.3d 431, 447–49 (2011), for example, in which we disbarred an attorney for misconduct related to assisting in the forging of estate documents despite the presence of mitigation.

**22.** Preliminarily, Mr. Pautsch asserted that the Commission "failed to properly exercise discretion," in considering the length of time since his convictions, because it considered its practice "not to give a license to a convicted felon until that person has been on probation for a long enough period of time to give the Commission confidence that he or she has shown satisfactory compliance with the terms ordered by the judge." This argument has no merit, however, as the Commission also considered and found persuasive the fact that Mr. Pautsch's "sexual abuse ... had occurred over a period of fifteen years," as opposed to the length of time since his conviction, which the Commission found was "less than two years."

subject to disciplinary action and had always received "superior" or "exceed[s] standards" on his employment evaluations. *Id.* at 563–64, 873 A.2d at 1149–50.

Thereafter, the Administration filed exceptions to the ALJ's decision, and the Secretary appointed a designee to consider them. The designee adopted all of the ALJ's findings and sustained all of the ALJ's conclusions of law save one: that Mr. Noland had not violated the Management's Workplace Violence Policy. The designee "disagree[d], as a matter of law, with the reasoning of the ALJ," explaining that he believed that "[s]triking a restrained and handcuffed patient with a closed fist is not acceptable," that it was "an unjustified act of violence," and that it was intended "to intimidate the patient." *Id.* at 564–565, 873 A.2d at 1150. Ultimately, the designee concluded that termination was the appropriate sanction, adding that, considering the "facts of the incident," Mr. Noland's "stellar record was irrelevant." *Id.* at 564–565, 873 A.2d at 1150.

Mr. Noland sought judicial review, arguing that the Administration's sanction was arbitrary and capricious. The Circuit Court agreed and reversed the Administration's sanction, reasoning that the agency gave "insufficient consideration to what the court believed were substantial mitigating factors." *Noland,* 386 Md. at 567, 873 A.2d at 1152. The Court of Special Appeals affirmed, reasoning that "while it may 'always be unwarranted conduct for a physician or a paramedic to strike his or her patient, that does not mean that the force is always excessive under the circumstances, especially where that individual is acting in self-defense.'" *Id.* at 569, 873 A.2d at 1153.

We reversed and ordered that the Administration's sanction be affirmed. In framing our analysis, we instructed that, "[a] reviewing court is not authorized to overturn a lawful and authorized sanction unless the disproportionality [of the sanction] or abuse of discretion was so extreme and egregious that the reviewing court can properly deem the decision to be arbitrary or capricious." *Noland,* 386 Md. at 581, 873 A.2d at

1160, quoting *MTA v. King*, 369 Md. 274, 291, 799 A.2d 1246, 1255–56 (2002) (internal quotation marks omitted). Because the Administration was authorized by law to terminate an employee, the burden fell upon Mr. Noland to demonstrate that the sanction " 'was so extreme and egregious' that it amounted to 'arbitrary or capricious' action." *Id.* at 582, 873 A.2d at 1161. In concluding that Mr. Noland failed to meet his burden of proof, we stated that evidence that " 'it was never warranted to strike a patient,' " coupled with the details of Mr. Noland's misconduct, was sufficient to "preclude a reviewing court from holding that the administrative decision was arbitrary or capricious." *Id.* at 582, 873 A.2d at 1161.

In the case before us, it is undisputed that Section 17–322(b)(24)(i) of the Business Occupations and Professions Article authorizes the Commission to "suspend or revoke" a real estate professional's licenses if, "under the laws of the United States or of any state," he is convicted of "a felony." Beyond lawfulness and authority, then, the only issue is whether Mr. Pautsch has shown that the Commission's sanction was so extreme and egregious that it amounted to arbitrary and capricious agency action. Based upon the testimony and the exhibits before it, the Commission found that Mr. Pautsch had been engaged in sexually abusive behavior towards minor children throughout a "fifteen-year period," and that, according to the Commission, showed a lack of responsibility, maturity, and trustworthiness on the part of Mr. Pautsch, as a real estate professional, which prevents a finding that the Commission's sanction was arbitrary or capricious.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY PETITIONER.**